IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NATIONAL INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>TIG INSURANCE COMPANY,<br><br>Defendant. | **8:22CV199**<br><br>**ORDER ON PRETRIAL CONFERENCE** |

A continued final pretrial conference was held on the 1st day of October, 2026. Appearing for the parties as counsel were:

1. Plaintiff National Indemnity Company ("National Indemnity"): Michael Knoerzer, Clyde & Co US LLP; Kevin O'Connor, Clyde & Co US LLP; Jason Grams, Grams Law LLC.

2. Defendant TIG Insurance Company ("TIG"): Scott Davis, Spencer Fane LLP; Tyler Scott, Spencer Fane LLP; Spencer Fane LLP.

(A) Exhibits. **See attached Second Amended Joint Exhibit List.**

(B) Uncontroverted Facts. The parties have agreed that the following may be accepted as established facts for purposes of this case only: **See attached Second Amended Stipulation of Uncontroverted Facts.**

(C) Controverted and Unresolved Issues. The issues remaining to be determined and unresolved matters for the court's attention are:[1]

[1] National Indemnity and TIG will address the issues identified in this Proposed Pretrial Order, and the factual and legal bases for their positions, in greater detail in their forthcoming Supplements to their Trial Briefs. In the Pretrial

**I. Choice of Law**

National Indemnity and TIG agree that Montana law governs (1) the interpretation of National Indemnity's policy issued to the State of Montana (the "Montana Policy"), and (2) National Indemnity's obligations to the State under the Montana Policy and common law. The Court has ordered (Order, Dkt. No. 571) that New York law governs the parties' obligations under the TIG Certificate.[2] Nebraska law governs procedural matters, including the potential application of pre-judgment interest to National Indemnity's claim. The parties dispute the legal and evidentiary effect in this action of the Montana judgments, orders, and court-approved settlements.

**II. Burden of Proof**

**a.** The parties agree that National Indemnity's breach of contract claim requires the factfinder to be satisfied by "the greater weight of the evidence." *Burgardt v. Burgardt*, 304 Neb. 356, 362 (2019).

**b.** The parties agree that under New York law, National Indemnity must, in part, "prove" its liability under the Montana Policy in order to recover under the TIG Certificate,[3] which expressly requires that National Indemnity provide "satisfactory evidence" of payment of a loss for which reinsurance is provided under the TIG Certificate. The parties disagree as to how those burdens may be met and whether the burden is affected by any action or inaction on the part of TIG.

***i.*** **National Indemnity's Position**: National Indemnity bears the burden to prove liability to the State under the Montana Policy for amounts not already admitted by TIG. Under settled New York law, National Indemnity's settlement with its insured is entitled to a presumption that the claims settled were covered under its Policy.[4] TIG previously determined that National Indemnity complied with the conditions of the TIG Certificate sufficient to support coverage for 21 occurrences and certain associated expenses. The Court's August 13, 2026 Order confirms that the Court's June 10, 2025 Order did not nullify TIG's coverage determinations or Rule 30(b)(6) testimony and that TIG remains bound by those admissions. August 13, 2026 Order, Dkt.

---

conference of September 17, 2026, the Court advised that this approach will not be deemed to have waived any arguments, claims or defenses.

[2] Skandia Insurance Company Ltd. Casualty Facultative Reinsurance Certificate No. 0584 ("TIG Certificate"), Dkt. No. 554-11.

[3] *See* Order at 54, No. 8:22-cv-199, Dkt. No. 571 (D. Neb. Jun. 10, 2025) (the "Order").

[4] *See* Supplemental Trial Brief.

No. 687. Accordingly, TIG has admitted satisfactory evidence and coverage for 21 occurrences, past defense costs, certain future defense costs, and National Indemnity's declaratory judgment expenses. National Indemnity contends those admissions satisfy any burden of proof otherwise applicable to those matters. This issue is more fully addressed in National Indemnity's Supplemental Trial Brief and Trial Brief. *See* Nat'l Indem. Trial Brief at 13, Dkt. No. 634; Supplemental Trial Brief.

***ii.*** **TIG's Position**: The Court has already correctly established the applicable burden of proof under New York law in its June 10, 2025 Order regarding the Motion for Partial Summary Judgment ("MPSJ Order"). Dkt. No. 571, at p. 54. Under New York law, National Indemnity has the burden to prove that it satisfied all conditions of the TIG Certificate and it was liable to pay each item included in its reinsurance billing *and* that those items are covered under both the Montana Policy and the TIG Certificate. National Indemnity must also show that it complied with the duty of utmost good faith in its allocation and billing to TIG. TIG disputes National Indemnity's argument that National Indemnity is entitled to a presumption that its settlement with the State is covered and National Indemnity's arguments concerning the scope and impact of TIG's admissions, and those matters will be addressed further in its supplemental trial brief.

**c.** The Parties agree that, generally speaking, TIG has the burden to prove its affirmative defenses by a preponderance of the evidence. *Empire State Bldg. Co. v. Bryde*, 211 Neb. 184, 191, 318 N.W.2d 65, 69 (1982); *Stoural v. Blue Cross & Blue Shield of Nebraska*, 1 Neb. App. 669, 674, 510 N.W.2d 357, 360 (1993) (equitable defense pled in legal action must be proven by "greater weight of the evidence"). However, the Parties disagree as to whether TIG may assert certain affirmative defenses and further dispute the burden of proof for certain affirmative defenses.

***i.*** **National Indemnity's Position:** TIG bears the burden of proving each element of its affirmative defenses. TIG therefore bears the burden of proving its assertions that National Indemnity breached the TIG Certificate. National Indemnity disputes that TIG may enlarge the express obligations imposed by the TIG Certificate through implied equitable duties. *See Glob. Reins. Corp. of Am. v. Century Indem. Co.*, 30 N.Y.3d 508, 519 (2017) ("*Global v. Century*") (New York's highest court rejecting the imputation of equitable or implied obligations

into reinsurance contracts). Additionally, TIG has a heightened burden of proof for its breach of the duty of utmost good faith defense, and is required to overcome a presumption of reasonableness with "substantial evidence." This issue is more fully addressed in National Indemnity's Supplemental Trial Brief and Trial Brief. *See* Nat'l Indem. Trial Brief at 32, Dkt. No. 634; Supplemental Trial Brief.

***ii.*** **TIG's Position:** Satisfaction of the conditions of the TIG Certificate, including the duty of utmost good faith, is an element of National Indemnity's breach of contract claim and thus National Indemnity bears the burden of establishing it complied with those conditions—it is not TIG's burden to prove it breached them, although it will submit evidence of National Indemnity's failures. TIG does not seek to enlarge National Indemnity's obligations by asserting that National Indemnity breached the duty of utmost good faith and acted in bad faith and unreasonably. New York courts continue to hold that a reinsured owes a duty of utmost good faith, which is a "core duty" of the reinsurance relationship and remains an affirmative duty with which the reinsured must comply. TIG is not held to a heightened standard of proof or required to overcome any presumption with respect to this defense.

**III. Plaintiff's Cause of Action – Breach of Contract:**

**a.** The parties agree that a breach of contract action under New York law requires: (1) the existence of a contract between the parties; (2) evidence that the claimant performed its obligations under the contract; (3) evidence that the respondent breached the contract; and (4) evidence of damages arising from the breach. *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000).

**b.** The Parties agree as to element 1 of the breach of contract claim - TIG issued a facultative reinsurance contract, the TIG Certificate, in favor of National Indemnity reinsuring the insurance policy issued to the State of Montana (the "Policy") and that the Certificate is valid.

**c.** The Parties disagree as to element 2 of the breach of contract claim.

***i.*** **National Indemnity's Position:** National Indemnity's obligations under the TIG Certificate are stated in Condition 3 of the TIG Certificate, which requires that National Indemnity promptly investigate and settle or defend all claims under the Policy, notify TIG of any event or development which National Indemnity reasonably believes might result in a claim, forward to TIG copies of such pleadings and reports of investigations as are pertinent to the claim

or may be requested by TIG, and allow TIG the right to associate in the defense of any claim at its discretion and cost.[5] National Indemnity fulfilled its obligations under the TIG Certificate and TIG has admitted it.[6] This issue is more fully addressed in National Indemnity's Supplemental Trial Brief and Trial Brief. *See* Nat'l Indem. Trial Brief at 14-33, Dkt. No. 634; Supplemental Trial Brief.

***ii.*** **TIG's Position:** To satisfy element two of its breach of contract claim, National Indemnity must establish that it satisfied all the terms and conditions of the TIG Certificate and acted in utmost good faith in both its handling of the underlying action and its billing to TIG. Because National Indemnity has not issued a subsequent reinsurance billing or proof of loss to TIG, National Indemnity must prove that it complied with these obligations at the time of its original June 2022 billing to TIG, not based on subsequent conduct or any new allocation. TIG has not admitted National Indemnity fulfilled its obligations. National Indemnity did not comply with its obligations in the TIG Certificate, including its duty of utmost good faith, for some of the following reasons: (1) National Indemnity did not "promptly investigate and … settle or defend all claims" (General Condition 3(a)); (2) National Indemnity did not honor the retention conditions in the TIG Certificate (General Condition 2); (3) National Indemnity did not notify "promptly of any event or development which the Company reasonably believes might result in a claim ...." (General Condition 3(a)); (4) National Indemnity did not defend the Libby Claims reasonably and in good faith; (5) National Indemnity did not provide "satisfactory evidence of payment of a loss for which reinsurance is provided" or provide sufficient support for its allocation; (General Condition 3(c)); (6) National Indemnity did not allocate the settlement in good faith, but rather to maximize its reinsurance recoveries; (7) National Indemnity's allocation included amounts that were not covered by the Montana Policy or the TIG Certificate, including extracontractual amounts; (8) National Indemnity misrepresented the basis of its settlement with the State of Montana; and (9) National Indemnity knew its allocation was not based on the terms of the Policy or facts and misrepresented the basis of its allocation. National Indemnity's subsequent and ongoing revisions to its allocation methodology is a continuing breach of these obligations and further evidence of bad faith. *See* TIG's Trial Brief, Dkt. No. 632, p. 28-53.

---

[5] TIG Certificate at TIG-SOM_000034, § 3(a), (b), Dkt. No. 554-11.

[6] *See* National Indemnity's Supplemental Trial Brief.

**d.** The parties disagree as to element 3, whether TIG breached its obligations under the contract.

***i.*** **National Indemnity's Position:** TIG breached its obligations under the contract by (1) continuing to withhold amounts based upon defenses which the Court has dismissed; (2) continuing to withhold payment for amounts National Indemnity contends are recoverable beyond TIG's admitted liability of 21 covered occurrences, $63,000,000 in covered indemnity, $6,872,919 of past defense costs, $6,547,842 of future defense costs, and $16,187,355 in declaratory judgment action expenses; and (3) TIG's liability for pre-judgment and post-judgment interest. *See* Supplemental Trial Brief.

***ii.*** **TIG's Position:** TIG has not breached its obligations because (1) National Indemnity failed to satisfy the conditions of the TIG Certificate, (2) significant portions of the June 2022 Billing were not recoverable under the TIG Certificate, (3) the amount National Indemnity claims is owed is based on a new allocation and new alleged evidence of occurrences that has never been the subject of a billing or proof of loss, and (4) National Indemnity breached its duty to defend the State of Montana and breached the duty of utmost good faith and acted in bad faith with respect to its June 2022 billing and allocation. National Indemnity continues to act in bad faith. *See* TIG's Trial Brief, Dkt. No. 632, p. 28-53; Supplemental Trial Brief.

**e.** The Parties disagree as to element 4 of National Indemnity's breach of contract claim – what damages are owed to National Indemnity from TIG.

***i.*** **National Indemnity's Position:** In addition to what TIG has already paid, TIG owes additional damages in the amount of $44,523,940, plus prejudgment interest.[7] These amounts are broken down as follows: into account TIG's prior payments, TIG's liability is as follows:

| | |
|---|---|
| Indemnity (27 occ. at TIG's $1 million limit) | $27,000,000 |
| TIG's share of the State's Defense Costs | $11,011,613 |

[7] These amounts take into account the Court's June 10, 2025 summary judgment Order which found that certain amounts National Indemnity was ordered to pay were ECO. National Indemnity disagrees with the Court's ECO ruling, and does not waive, but fully preserves its rights to appeal the Order.

| | |
|---|---|
| TIG's share of Prejudgment Interest on Fully Defended Claims Only | $1,648,257 |
| TIG's share of Post Judgment Interest | $10,536,705 |
| TIG's share of DJ Expenses | $8,078,717 |
| (Less $13,751,352 in TIG's Prior Payments)[8] | ($13,751,352) |
| **Total Due from TIG (exclusive of Nebraska pre-judgment interest)** | **$44,523,940** |

National Indemnity contends that the calculation of these amounts may be determined as a question after the jury determines reasonableness of National Indemnity's determination of the number of occurrences and the amount of future defense costs. This issue is more fully addressed in National Indemnity's Supplemental Trial Brief and Trial Brief. *See* Nat'l Indem. Trial Brief at 25-28, Dkt. No. 634; Supplemental Trial Brief.

*ii.* **TIG's Position**: As an initial matter, damages, and the amount, if any, which TIG owes under the TIG Certificate is entirely a question for the jury. The issue depends on numerous issues of fact and disputes for the jury to resolve. National Indemnity has suffered no damage because TIG has already paid far in excess of what it could possibly owe (if anything) under the Certificate. Even on National Indemnity's best day, TIG would owe far less than what National Indemnity currently claims, as described in TIG's Trial Brief, Dkt. No. 632, p. 53-59, and further described in its Supplemental Trial Brief.

**IV. TIG's Affirmative Defenses**

**a. TIG asserts several affirmative defenses, which are contested:**

***i.*** **TIG's Position on its Affirmative Defenses:**

i. <u>1st Affirmative Defense (Failure to State a Claim Upon Which Relief May be Granted)</u>: National Indemnity has failed to state a claim upon which relief can be granted for the reasons discussed in Sections III.c, III.d, and III.e.

[8] TIG made prior payments of $1,000,000 in or around May 19, 2017 and $12,751,352 on September 25, 2023.

ii. 2nd Affirmative Defense (No Justiciable Case or Controversy): National Indemnity is not entitled to declaratory relief.

iii. 3rd Affirmative Defense (Claims Barred by Certificate): National Indemnity's claims are barred by the terms, conditions, limits and exclusions in the Certificate because National Indemnity failed to comply with the conditions of the Certificate for the reasons discussed in sections III.c. and III.d. above, seeks to recover extracontractual damages and other amounts not covered by the Montana Policy or TIG Certificate, and breached its duty of utmost good faith for the reasons discussed in sections III.c. and III.d. *See* Trial Brief Dkt. No. 632, p. 36-53.

iv. 4th Affirmative Defense (Amounts Not Covered by Reinsured Policy): National Indemnity's claims are barred because it seeks to recover extracontractual damages, interest on a judgment against National Indemnity, and other amounts not covered by the Montana Policy and thus not covered by the TIG Certificate.

v. 5th Affirmative Defense (Failure to Comply with Express and Implied Conditions and Duties Under the TIG Certificate): National Indemnity failed to comply with the conditions of the TIG Certificate and breached the duty of utmost good faith by, among other things: (1) breaching Condition 3(a) because its conduct in handling the State's claim for coverage was unreasonable and resulted in an unreasonable settlement and allocation to TIG; (2) breaching Condition 3(a)'s prompt notice requirement by failing to notify TIG of the claims until 2005 and failing to notify TIG that National Indemnity refused to provide a complete defense until four years after that decision was communicated to the State; (3) breaching Condition 3(b) and the Certificate more generally by failing to provide adequate notice, information and updates regarding the handling of the claims and failing to provide adequate notice, information and updates, and providing false information, regarding the settlement with the State; (4) breaching Condition 3(c) by failing to provide satisfactory proof of liability for the amounts billed to TIG, billing TIG for amounts not covered by the Montana Policy, billing TIG for extracontractual damages awarded as a consequence of National Indemnity's breach of the duty to defend, which are not covered by the Montana Policy or TIG Certificate, billing TIG for amounts that do not constitute "loss" under the Certificate and fabricating

the number of occurrences upon which its settlement with the State was based, and improperly billing amounts as loss expense that are actually loss.

vi. 6th Affirmative Defense (Statute of Limitations): TIG acknowledges that the Court rejected this defense in its Order on Summary Judgment. TIG merely intends to preserve and not waive this defense for appellate purposes. National Indemnity's claim to recover a share of the $16.1 million payment National Indemnity made in 2011 is barred by the applicable statute of limitations. N.Y.C.P.L.R. § 213(2) (six years); Neb. Rev. stat. § 250-205 (five years).

vii. 7th Affirmative Defense (Waiver, Estoppel, and Laches): The elements of equitable estoppel are (1) conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intent that such conduct (representation) will be acted upon; and (3) knowledge, actual or constructive, of the true facts. *Cal Creations, LLC v. Barbato*, No. 8:25CV3118, 2025 WL 2896937, at *20 (D. Neb. Oct. 10, 2025). National Indemnity is precluded by equitable estoppel from re-allocating to TIG based on different arguments concerning, *inter alia*, the amounts at issue, different evidence, or a different number of occurrences. Rather than present a new billing or new support for its billing after the June 2022 Billing, National Indemnity argued that TIG must pay the billing in full only because National Indemnity believed it to be subjectively reasonable. National Indemnity should be precluded from changing its position on the amounts allocable to TIG now because TIG assumed National Indemnity's position was its true position and relied on National Indemnity's arguments as the basis for the Billing, while National Indemnity withheld true facts, including the basis for the settlement. National Indemnity is also estopped or has waived any right to rely upon the September 2023 letter, and associated testimony, based on the contractual non-waiver agreement between the parties. This defense is addressed in TIG's Trial Brief, Dkt. No. 632, p.62-63 and will be further addressed in TIG's Supplemental Trial Brief.

viii. 8th Affirmative Defense (Unclean Hands): "Under the doctrine of unclean hands, a person who comes into a court of equity to obtain relief cannot do so if he or she has acted inequitably, unfairly, or dishonestly as to the controversy in issue." *Olsen*

*v. Olsen*, 265 Neb. 299, 310, 657 N.W.2d 1, 10 (2003). TIG must prove National Indemnity is (1) "guilty of immoral, unconscionable conduct" that (2) "is directly related to the subject matter in litigation" that (3) injured TIG. *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 122 (S.D.N.Y. 2020). National Indemnity's claims are barred by the doctrine of unclean hands because National Indemnity is guilty of unconscionable conduct related to the subject of this litigation—namely with respect to its obligations to the State in connection with the Libby Mine Claims, its obligations owed to TIG, and its allocation of the settlement in its billing.

ix. 9th Affirmative Defense (Coverage for Extra-Contractual Damages): National Indemnity failed to comply with the Certificate and acted unreasonably and in bad faith because it billed TIG for extracontractual damages awarded as a consequence of National Indemnity's breach of the duty to defend which are not covered by the Montana Policy or the TIG Certificate. These amounts were paid by National Indemnity without reservation and prior to reaching a settlement agreement with the State. This is further discussed in Section III.c. above and in TIG's Trial Brief, Dkt. No. 632, p. 28-31, 42-44.

x. 10th Affirmative Defense (Failure to Conduct Reasonable Investigation and Settlement): National Indemnity's claims are barred because National Indemnity breached Condition 3(a) in that its conduct in handling the State's claim for coverage was unreasonable and resulted in an unreasonable allocation to TIG.

xi. 11th Affirmative Defense (Punitive, Bad Faith, Extra-contractual Damages): National Indemnity's claims are barred because it seeks to recover from TIG extra-contractual damages as a consequence of National Indemnity's breach of the duty to defend and amounts resulting from National Indemnity's bad faith conduct, which are not covered by the Montana Policy TIG Certificate.

xii. 12th Affirmative Defense (Breach of Duty of Good Faith In Handling Libby Mine Claims): New York law continues to recognize the duty of utmost good faith. National Indemnity breached the duty of utmost good faith and acted unreasonably and in bad faith under the TIG Certificate in connection with its failure to defend the State in the Libby Mine litigation—which resulted in, among other things, an

award of extracontractual damages against National Indemnity and unreasonable declaratory judgment fees.

xiii. 13th Affirmative Defense (No Loss or Occurrence): National Indemnity's claims are barred because it seeks to recover amounts that do not involve an "occurrence" or "loss," including extra-contractual damages. Its claims are also barred because it fabricated and has failed to provide satisfactory evidence of the number of occurrences on which its claim is based and other amounts it seeks to recover, which do not constitute "loss."

xiv. 14th Affirmative Defense (Failure to Provide Proper Notice): National Indemnity's claims are barred because it breached Condition 3(a)'s prompt notice requirement by failing to notify TIG of the claims until 2005 and failing to notify TIG that National Indemnity refused to provide a complete defense until four years after that decision was communicated to the State; and breached Condition 3(b) and the Certificate more generally by failing to provide adequate notice, information and updates regarding the handling of the claims and failing to provide adequate notice, information and updates, and providing false information, regarding the settlement with the State.

xv. 15th Affirmative Defense (Failure to Cooperate/Impairment of Rights): National Indemnity's claims are barred because National Indemnity's conduct in failing to provide timely, proper, and adequate notice and information; in providing false information to TIG; and in billing TIG for fabricated and uncovered amounts constitutes a failure to cooperate and impaired TIG's rights.

xvi. 16th Affirmative Defense (Breach of Duty of Good Faith in Allocation): National Indemnity breached the duty of utmost good faith and acted in bad faith under the TIG Certificate in connection with its June 2022 allocation and billing and in its more recent conduct related to its recalculated damages and attempts to use confidential communications to prove TIG's liability.

xvii. 17th Affirmative Defense (Uncovered or Excluded Amounts): National Indemnity's claims are barred because it seeks to recover amounts that are not covered or excluded by the TIG Certificate, including extra-contractual damages awarded as a result of its breach of the duty to defend, interest on a judgment against National

Indemnity, and amounts which it fabricated, have no basis in fact, and for which it failed to provide satisfactory evidence of liability.

xviii. 18th Affirmative Defense (Failure to Mitigate): The defense of failure to mitigate requires proof that the plaintiff did not make reasonable efforts to reduce or avoid damages or losses. *See* N.Y. Pattern Jury Instr.--Civil 4:20.1; *S.N. Mart, Ltd. v. Maurices Inc.*, 234 Neb. 343, 348, 451 N.W.2d 259, 263 (1990). First, National Indemnity failed to mitigate its damages to the State. When it finally agreed to defend the State after its long delay and failure to file a timely declaratory judgment action, it still refused to acknowledge and mitigate the consequences of its breaches. It did not reasonably and objectively value the claims considering its compromised position. Instead, it made only a partial payment on the Global Settlement, contested the consequences of its breach, and delayed the resolution of the number of occurrences, which would have limited its liability and stopped the accrual of additional defense costs and interest. Second, if National Indemnity could establish breach and damages against TIG (it cannot), it should also be found to have failed to mitigate because of National Indemnity's failure to act with the utmost good faith.

xix. 19th Affirmative Defense (No Right to Attorneys' Fees): National Indemnity is not entitled to attorneys' fees in this action because it is not entitled to judgment and because Neb. Stat. Ann. § 44-359 does not apply to this dispute.

***ii.*** **National Indemnity's Position on TIG's Affirmative Defenses:** TIG's affirmative defenses fail for four independent reasons. First, TIG remains bound by its own coverage determinations and Rule 30(b)(6) admissions Second, TIG's affirmative defenses improperly seek to enlarge the obligations imposed by the TIG Certificate through implied duties and equitable concepts that are not found in the TIG Certificate and which New York law does not imply. *Glob. Reins. Corp. of Am.*, 30 N.Y.3d at 519. Third, TIG's assertions that National Indemnity acted unreasonably, in bad faith, or in breach of any duty of utmost good faith are contradicted by the factual record, the decision of the Montana Supreme Court, which declared that National Indemnity was not a tortfeasor,[9] and *Coleman v. Nat'l Indem. Co.*, No. 25-4982, 2026

[9] *Nat'l Indem. Co. v. State of Montana*, 406 Mont. 288, 338 (2021) (The Montana Supreme Court specifically ruled that National Indemnity was "not a tortfeasor being 'punished' for its actions." To the contrary, Montana's highest

WL 1816141 (9th Cir. June 24, 2026). . Fourth, many of TIG's affirmative defenses merely restate TIG's denial of National Indemnity's breach of contract claim and therefore do not constitute proper affirmative defenses.

In addition:

i. 9th and 11th Affirmative Defenses (Punitive, Bad Faith, Extra-Contractual Damages): National Indemnity is not seeking punitive damages, bad faith damages, or any recovery against TIG for extra-contractual liability and itself has not been found liable for such damages. National Indemnity separately preserves its objection to the Court's characterization of certain portions of the Montana liability as ECO.

ii. 10th Affirmative Defense (Failure to Conduct Reasonable Investigation / Settlement): National Indemnity denies this affirmative defense factually and asserts that TIG waived any challenge to National Indemnity's handling of the Libby claims by declining to associate in Montana despite years of notice.

iii. 13th Affirmative Defense (Not an Occurrence or Loss): TIG has conceded the existence of 21 covered occurrences and made a partial payment on that basis. The only question is whether National Indemnity was reasonable in settling at 27 occurrences.

iv. 14th and 15th Affirmative Defenses (Failure to Notice / Cooperate): TIG's corporate representative testified to timely notice and TIG elected not to exercise its contractual right to associate despite years of notice regarding the Montana proceedings.[10]

v. 17th Affirmative Defense (Relief Not Covered / Excluded): This is a breach of contract argument, not a true affirmative defense.

vi. 18th Affirmative Defense (Failure to Mitigate): There is no provision in the TIG Certificate that requires that National Indemnity mitigate and no such duty may be implied under New York law.

---

Court held that "Rather, it is being held to account for breaches of its contractual and legal duty to defend, as the law requires of and imposes upon all insurers, and for payment under the coverages provided by a nearly 50-year-old Policy.").

[10] *See supra* § III.c.1.

These issues are more fully addressed in National Indemnity's Supplemental Trial Brief. *See* Supplemental Trial Brief.

**V. Other Issues Requiring the Court's Determinations.**

**a. Effect of the Court's August 13, 2026 Order (Dkt No. 687) on the Scope of Trial**

***i.*** **National Indemnity's Position:** The August 13 Order confirms that TIG is bound by its admissions. The Court should bar TIG from denying at trial that it admitted coverage for 21 occurrences, past defense costs, a share of future defense costs, and National Indemnity's declaratory judgment expenses. This issue is more fully addressed in National Indemnity's Supplemental Trial Brief. *See* Supplemental Trial Brief.

***ii.*** **TIG's Position:** The August 13 Order already set forth the impact on the scope of the trial. The Court did not find as a matter of law that there were at least 21 occurrences, or that TIG admitted coverage for 21 occurrences, past defense costs, or a share of future defense costs billed. It merely held that the MPSJ Order did not nullify Mr. Richmond's statements and testimony and permitted TIG to present evidence contradicting Mr. Richmond's testimony. TIG still respectfully contends that the September Letter (or testimony describing it) is not admissible in light of the parties' contractual non-waiver agreement, and will address this issue further in its Supplemental Trial Brief.

**b. Whether the Court Should Reconsider Its Characterization of Contractual Liabilities as Extra-Contractual Obligations**

***i.*** **National Indemnity's Position:** National Indemnity recognizes that the June 10, 2025 Order (Dkt. No. 571) characterized certain amounts imposed in the Montana proceedings as extra-contractual obligations ("ECO") not reinsured by TIG. National Indemnity respectfully submits that the ruling rests on a mistaken legal premise and should be reconsidered in light of subsequent authority and the clarified evidentiary record. *See* Supplemental Trial Brief. National Indemnity otherwise preserves the issue for appellate review.

***ii.*** **TIG's Position:** National Indemnity's position is an improper, untimely motion to reconsider, made in a Pretrial Order and TIG asks the Court to strike this section. No subsequent applicable authority or newly discovered facts exist or warrant reconsideration. Motions for reconsideration that reargue the merits of a prior motion, as National Indemnity does here, should be denied. *See* Supplemental Trial Brief.

**c. Whether This Court's Ruling Includes National Indemnity's Prior $16.1 Million Settlement Contribution**

***i.*** **National Indemnity's Position:** If the Court adheres to its ECO ruling, the Court should determine that the ruling is limited to the $26.9 million remaining portion of the 2009 Global Settlement that National Indemnity was ordered to pay, and does not include National Indemnity's earlier $16.1 million voluntary contribution toward settlement of covered bodily injury claims. The June 10 Order distinguished the $16.1 million contribution from the remaining amount imposed by judgment and did not expressly characterize the prior contribution as ECO. *See* Supplemental Trial Brief.

***ii.*** **TIG's Position:** The trial court held, and the Montana Supreme Court affirmed, that the entire 2009 Global Settlement amount ($42.9 million) was awarded to the State without regard to policy limits or defenses, as a consequence of National Indemnity's breach, because it was a settlement finalized during the period in which National Indemnity was found to have breached its duty to defend. That National Indemnity paid $16.1 million before the judgment is of no consequence. The entire amount constitutes extra-contractual damages. TIG will take this position at trial and will address it further in its Supplemental Trial Brief.

**d. Whether TIG is Liable for Past Defense Costs Awarded in the Underlying Action.**

***i.*** **National Indemnity's Position:** The Montana Policy expressly imposes an obligation to pay the State's defense costs, which obligation TIG conceded when it paid a share of $6,872,918.69 of past defense costs. [11] The Court should reconsider its characterization of the State's past defense costs as ECO. *See* Supplemental Trial Brief.

***ii.*** **TIG's Position:** The Court already held that the State's past defense costs were extracontractual damages and TIG has no obligation to pay those amounts. National Indemnity's argument to the contrary has already been rejected and the Court should not reconsider or revisit its rulings. *See* Supplemental Trial Brief.

**e. Whether TIG is Liable for Pre-Judgment Interest and Post-Judgment Interest During "Estoppel Periods"?**

---

[11] September 25, 2023 Letter from Stewart Richmond to Donald Wurster ("September 25 Letter") at NICO-1946058-59, Dkt. No. 606-10.

***i.*** **National Indemnity's Position:** The Court should reconsider its ruling that pre-judgment interest is ECO.[12] (There has been no ruling on post-judgment interest). Montana law automatically imposes pre-judgment interest and post-judgment interest on all parties which are found to have breached a contract, irrespective of any breach of the duty to defend. Interest is an "expense" and TIG is required, under the terms of the TIG Certificate, to promptly reimburse National Indemnity for its reinsurance share (in addition to limits) of "loss expense," which includes pre-judgment and post-judgment interest. National Indemnity disagrees that interest covered by the TIG Certificate is "loss" for the reasons previously presented on the summary judgment briefs and as will be more fully addressed in National Indemnity's Supplemental Trial Brief. *See* Nat'l Indem. Trial Brief at 22-25, Dkt. No. 634; Supplemental Trial Brief. National Indemnity denies conceding the points below that TIG says were conceded.

***ii.*** **TIG's Position:** The Court already held that pre-judgment interest on amounts owed for the claims that were not fully defended (the "Estoppel Periods") were extracontractual damages and TIG has no obligation to pay those amounts. National Indemnity's argument has already been rejected and the Court should not reconsider its rulings. TIG is not liable for post-judgment interest because (1) the entire judgment on which the post-judgment interest accrued was extra-contractual damages not covered by the TIG Certificate—if the judgment was not covered, post-judgment interest on that judgment is not covered; and (2) the post-judgment interest was awarded on a judgment against National Indemnity, not on a judgment against the State, and post-judgment interest on a judgment against National Indemnity is not covered by the Policy and thus not covered by the TIG Certificate. Even if this Court rules that TIG is required to pay interest, the interest is "loss" not "loss expense" and subject to the reinsurance limits of the TIG Certificate. *See* TIG Trial Brief, Dkt. No. 632, at p. 21-24, 42-44; Supplemental Trial Brief.

**f. Whether TIG Is Liable for Pre-Judgment Interest Expense and Post-Judgment Interest Expense Incurred for Non-Estoppel Periods?**

***i.*** **National Indemnity's Position:** Some of the pre-judgment and post-judgment interest paid by National Indemnity involved indemnity in so-called "non-estoppel" periods. The Court has not yet decided whether TIG is liable for National Indemnity's $3,302,619 pre-judgment interest expense for what the Court has described as the "non-estopped, fully defended

[12] *See Penn-Star Ins. Co.*, No. 24-2925, 2025 WL 2992578, at *4 (2d Cir. Oct. 24, 2025)

claims" and post-judgment interest expense under the TIG Certificate. (*See* Order at 43 n. 19, Dkt. No. 571). The legal basis for determination of this issue is more fully addressed in National Indemnity's Trial Brief and Supplemental Trial Brief. Nat'l Indem. Trial Brief at 22-25, Dkt. No. 634; Supplemental Trial Brief.

***ii.*** **TIG's Position:** TIG disputes that National Indemnity paid pre-judgment and post-judgment interest for indemnity in so-called "non-estoppel" periods. The judgment that National Indemnity paid prior to issuing its $62.5 million settlement payment to the State was all "Estoppel Period" damages and the pre-judgment and post-judgment interest was only for the Estoppel Period. The portion of the judgment related to the Non-Estoppel Period was reversed and remanded and thus there was no judgment upon which pre- or post-judgment interest could accrue. The remaining $62.5 million clearly did not include any pre-judgment or post-judgment interest and thus TIG never received satisfactory evidence of pre-judgment or post-judgment interest on Non-Estoppel Periods. Any post-judgment interest is also not recoverable because it was interest on a judgment against National Indemnity, not the State. Even if recoverable, the interest is "loss" not loss expense. *See* TIG Trial Brief, Dkt. No. 632, at 1-4, 23-24, 29-31, 43, 48-49, 53-56; Supplemental Trial Brief.

**g. What is TIG's Reinsurance Share of Expenses?**

***i.*** **National Indemnity's Position:** Following the Court's June 10, 2025 Order deducting $26.9 million from National Indemnity's initial indemnity calculation of $81 million results in an indemnity amount of $54.1 million.[13] Pursuant to the language of the TIG Certificate, TIG's 27 occurrence reinsurance share of liability is 49.9% ($27 million divided by $54.1 million). This issue is fully addressed in National Indemnity's Trial Brief. Dkt. No. 634, at 25-29 (National Indemnity will supplement discussion of TIG's reinsurance share in its Supplemental Trial Brief). With the exception of the number of occurrences, these calculations arise entirely from undisputed facts and unambiguous contract language. Upon the jury's determination of the number of occurrences, the Court can readily make the mathematical calculation of TIG's reinsurance share of expenses. It is not for the jury to act as a calculator to make the calculation, and there are no facts for the jury to decide in this respect.

***ii.*** **TIG' Position:** TIG does not consider this an issue for the Court. The issue depends on numerous issues of fact and disputes for the jury to resolve, including but not limited to whether National Indemnity complied with the terms of the TIG Certificate, whether it provided

[13] The missing $100,000 was paid by another insurer of the State, Glacier Insurance Company.

sufficient proof of each portion of its June 2022 billing, whether it has sufficient proof of the number of occurrences, whether it breached the duty of utmost good faith in its billing to TIG and its continued course of conduct, and whether National Indemnity breached the duty of utmost good faith. However, as described in connection with element 4 of the Breach of Contract claim, even if National Indemnity was not precluded from recovery on these grounds, TIG is not responsible for any share of liability because the amount of recoverable indemnity does not reach TIG's layer. Alternatively, on National Indemnity's best day, TIG's reinsurance share is no more than 33.6 percent. *See* TIG's Trial Brief, Dkt. No. 632, p. 53-59; Supplemental Trial Brief.

**h. TIG's Liability for Future Defense Costs.**

***i.*** **National Indemnity's Position:** National Indemnity reasonably estimated future defense costs at $15,191,091, and TIG is liable for its 49.9% reinsurance share for this amount. TIG has admitted it owes its reinsurance share for $6,547,842 of future defense costs, paid a fraction of that amount and has withheld the remaining future defense costs due to the now rejected breach of warranty defense.[14] TIG's admitted liability for future defense costs is:[15]

a. State of Montana's additional estimated defense costs and expenses (stated in John Sullivan's January 10, 2022 letter): $6,000,000.[16]
b. State of Montana's additional actual defense costs and expenses for the Rounds 4 and 5 Libby Mine Claimants (stated in John Sullivan's January 10, 2022 letter): $547,842.62.[17]

TIG has therefore paid $6,547,842.62 of the $15,1919,091 due.[18] This issue is addressed in National Indemnity's Trial Brief and Supplemental Trial Brief. *See* Nat'l Indem. Trial Brief at 28-31, Dkt. No. 634; Supplemental Trial Brief. Given that future defense costs (of which TIG has already paid its share of $6,547,842) involves the future and not settled facts, TIG's argument that National Indemnity must "prove" the future is nonsensical as a matter of law and reason.

***ii.*** **TIG's Position:** TIG is not obligated to pay *any* of the State's future defense costs. National Indemnity misstates its burden and TIG has not admitted liability. National Indemnity

[14] *See* September 25 Letter at NICO-1946058-59, Dkt. No. 606-10.
[15] September 25, 2023 Letter from Stewart Richmond to Donald Wurster ("September 25 Letter") at NICO-1946058-59, Dkt. No. 606-10.
[16] January 10, 2022 Settlement Letter at NICO-0043664, Dkt. No. 407-61.
[17] January 10, 2022 Settlement Letter at NICO-0043661, Dkt. No. 407-61.
[18] *See* September 25 Letter at NICO-1946058-59, Dkt. No. 606-10.

must, but has not and cannot, provide satisfactory evidence of its liability for any future defense costs covered by the Montana Policy and TIG Certificate. In settlement discussions, while it identified roughly $6 million in future defense costs, the State agreed that it would assume those costs and National Indemnity would not pay them if a settlement was reached. National Indemnity bears the burden of establishing with satisfactory evidence the amounts it allocated. The remaining $9,191,000 million was fabricated by Mr. Tom Ryan with no basis in fact (and no supporting analysis, actuarial or otherwise) and despite being warned that the State only estimated $6 million in future defense costs. Discovery in this case has determined that National Indemnity's $62.5 million settlement and liability to the State did not include future defense costs. National Indemnity cannot provide satisfactory proof of liability or coverage and engaged in bad faith by billing TIG for such alleged costs. *See* TIG Trial Brief, Dkt. No. 632, p. 46-47, 56; Supplemental Trial Brief.

**i. TIG's Liability for the State's Declaratory Judgment Action Attorneys' Fees.**

***i.*** **National Indemnity Position:** The Court should reconsider its ruling that the State's Declaratory Judgment Action Attorneys' Fees are ECO. TIG is liable for its 49.9% reinsurance share of the State's Attorneys' Fees, because they were awarded not because of the breach of the duty to defend but because Montana law awards them "when the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract, regardless of whether the insurers' duty to defend is at issue."[19] TIG owes National Indemnity for its 49.9% reinsurance share of the $3,570,410.44 billed.[20] *See* Supplemental Trial Brief.

***ii.*** **TIG's Position:** This Court has already explicitly held that the State's Declaratory Judgment Action attorneys' fees were extracontractual damages not covered by the Policy and thus not covered by the TIG Certificate. [21] For the reasons discussed above, the Court should not reconsider or reverse its ruling on these issues. TIG is not liable for any amount of these fees and there is nothing further to be decided. *See* Supplemental Trial Brief.

[19] *See* February 27, 2018 Montana District Court Order ("2018 District Court Order") at 39, Dkt. No. 407-54 (citing *Mountain W. Farm Bureau v. Brewer*, 315 Mont. 231, 243 (2003)).
[20] June 6, 2022 Billing Narrative, Dkt. No. 407-56.
[21] Order, at 40-43, Dkt. No. 571 (holding that "TIG was not expected to take the risk that National Indemnity would become liable for prejudgment interest or [the State's] attorney's fees because of claims handling practices that amounted to a breach of the duty to defend" and that the "State's attorney's fees…are not covered under the TIG Certificate.").

**j. Whether References Before the Jury Regarding the Court's ECO Finding Are Relevant or Should Be Precluded.**

***i.*** **National Indemnity's Position:** The Court's determination that certain portions of National Indemnity's liability were ECO was published after the deadline for submitting motions in limine. National Indemnity addresses this issue in its Supplemental Trial Brief in lieu of a motion in limine. *See* Supplemental Trial Brief.

***ii.*** **TIG's Position:** This is an evidentiary issue that should have been brought as a motion in limine and is thus improper. Nevertheless, both the Montana Supreme Court and this Court's rulings regarding extra-contractual damages are highly relevant and material to TIG's defenses, critical to any understanding of the facts and circumstances relevant to this dispute, and should not be excluded. TIG will address this issue in its Supplemental Trial Brief.

**k. Whether TIG's September 2023 Payment Was Made Pursuant to the Parties' Contractual Non-Waiver Agreement.**

***i.*** **TIG's Position:** TIG's September 2023 good-faith payment was made pursuant to a contractual non-waiver agreement between the parties that was finalized in 2017, and which was expressly referenced in National Indemnity's June 2022 billing (to which TIG's September 2023 letter was responding). TIG does not believe the Court addressed the impact of the contractual non-waiver agreement in its August 13 Order and thus TIG contends this issue is still one that warrants determination by the Court. TIG intends to further address this issue in its Supplemental Trial Brief.

***ii.*** **National Indemnity's Position:** TIG advanced this position in its opposition to National Indemnity's Rule 60 motion. The Court did not uphold that argument, but determined that TIG was bound by its prior admissions. *See* Court's August 13, 2026 Order, Dkt. No. 687. National Indemnity intends to further address this issue in its Supplemental Trial Brief. *See* Supplemental Trial Brief.

**l. If National Indemnity Is Permitted to Present Its New Allocation Methodology, Whether National Indemnity's Settlements with Other Carriers Should Be Accounted For.**

***i.*** **TIG's Position:** National Indemnity's current damage calculation is improper and unsupportable. If that damage calculation is considered, however, National Indemnity's settlements with other reinsurers should be accounted for. TIG intends to further address these issues in its Supplemental Trial Brief.

*ii.* **National Indemnity's Position:** TIG's contractual liability exists based upon its contract and its liability is several, not joint. Other reinsurers' payments have no impact upon TIG's obligations. This issue is entirely a question of law and National Indemnity will address this further in its Supplemental Trial Brief. *See* Supplemental Trial Brief. To the extent that TIG wishes the jury to hear of other reinsurers' payments, or of an arbitration panel's rulings regarding a reinsurer's obligations to National Indemnity, National Indemnity is prepared to follow the instructions of the Court.

## VI. Pending Motions.

The following motions remain pending:

1. National Indemnity's Motion in Limine Regarding Expert Witnesses (Dkt. No. 475)
2. TIG's Motion in Limine to Exclude Expert Opinions and Testimony of Charles Ehrlich (Dkt. No. 489)
3. TIG's Motion to Exclude Expert Opinions and Testimony of Robert M. Hall (Dkt. No. 491)
4. National Indemnity's Motion to Strike TIG's Supplemental Disclosures and Responses Pursuant to Federal Rule of Civil Procedure 16 (Dkt. No. 538)
5. National Indemnity's Omnibus Motion in Limine (Dkt. No. 553)
6. TIG's Omnibus Motion in Limine (Dkt. No. 565)
7. National Indemnity Company's Request for Judicial Notice Pursuant to Federal Rule of Evidence 201 (Dkt. No. 694).

## VII. Witnesses.

All witnesses, including rebuttal witnesses, expected to be called to testify by National Indemnity, except those who may be called for impeachment purposes as defined in NECivR 16.2(c) only, are:

1. Donald Wurster, President of National Indemnity – Omaha, Nebraska

2. Brian Snover, Senior VP and General Counsel of Berkshire Hathaway Group – Stamford, Connecticut

3. Thomas Ryan, President of Resolute Management – Marblehead, Massachusetts

4. Nancy Peters, General Counsel of National Indemnity – Omaha, Nebraska

5. Stewart Richmond, TIG's Manager of Assumed Reinsurance – Dunbarton, New Hampshire

6. Judy Harnadek, National Indemnity's Manager of Ceded Reinsurance – Howell, New Jersey

7. Custodians of Record as needed including:

    a. Nancy Peters (Omaha, Nebraska),

    b. Judy Harnadek (Howell, New Jersey),

    c. Wendy Enerson (Chicago, Illinois),

    d. Wiley Barker (Helena, Montana),

    e. McKayla Marshall (Helena, Montana),

    f. Micah L. Hall (Helena, Montana),

    g. Lisa Kallio (Helena, Montana),

    h. Dale Cockrell (Kalispell, Montana),

    i. Robert Hughes (Stamford, Connecticut),

    j. Matthew Penny (New York, New York), and

    k. potential other record custodians if necessary.

All witnesses expected to be called to testify by defendant TIG, except those who may be called for impeachment purposes as defined by NECivR 16.2(c) only, are:

1. William Bouvier – Amherst, New Hampshire

2. Dale Cockrell (by deposition designation)

3. Stewart Richmond - Dunbarton, New Hampshire

4. William Gianoulias (by deposition designation)

5. Records Custodians (Stewart Richmond and potential other record custodians if necessary)

6. Witnesses identified on National Indemnity's Witness List

**VIII. Expert Witnesses' Qualifications.**

Experts to be called by plaintiff and their qualifications are:

1. Charles Ehrlich, expert (subject to Court rulings) (New York, New York) – See Attached C.V.

2. Robert Hall, expert (subject to Court rulings) (Rockport, Maine) – See Attached C.V.

Experts to be called by defendant TIG and their qualifications are:

1. Paul C. Thomson III (subject to Court rulings)– See Attached C.V.[22]
2. John Chaplin (subject to Court rulings) – See Attached C.V.

3. Robert Kuehn (subject to Court rulings)– See Attached C.V.

**IX. Voir Dire.**

Counsel have reviewed Federal Rule of Civil Procedure 47(a) and NECivR 47.2(a) and suggest the following with regard to the conduct of juror examination:

- The Court shall conduct a limited examination of the prospective jurors. *See* NECivR 47.1(a) Should the Court wish for the parties to submit proposed questions for consideration, the parties will submit any proposed questions seven (7) days before the start of trial. Counsel for National Indemnity and counsel for TIG shall each receive thirty (30) minutes to conduct any additional voir dire. The Courtroom Deputy will monitor time

[22] National Indemnity objects to TIG's improper designation of Paul Thomson as an expert witness on its behalf. Mr. Thomson was designated as an expert by former defendant Horace Mann. TIG never disclosed Mr. Thomson as its expert and Mr. Thomson never prepared a report on behalf of TIG. Mr. Thomson was deposed without revealing any association with TIG. National Indemnity would suffer prejudice if Mr. Thomson were permitted now to switch horses (and contracts) and testify on behalf of TIG.

and provide notice of the expiration of such time, and if requested, will provide notice when five (5) minutes remain.

## X. Peremptory Challenges.

**National Indemnity and TIG's position:** National Indemnity and TIG shall each have the right to exercise up to three (3) peremptory challenges. *See* NECivR 47.1(b); *see also* 28 U.S.C. § 1870. All parties will exercise their peremptory challenges alternately, beginning with Plaintiff.

## XI. Number of Jurors.

Counsel have reviewed Federal Rule of Civil Procedure 48 and NECivR 48.1 and suggest that this matter be tried to a jury composed of at least 8 members.

## XII. Verdict.

The parties will not stipulate to a less-than-unanimous verdict. Any verdict reached in this matter must be unanimous.

## XIII. Briefs, Instructions, and Proposed Findings.

Counsel have reviewed NECivR 39.2(a), 51.1(a), and 52.1. The parties are submitting Supplemental Trial Briefs on or before October 8, 2026 and suggest the following schedule for filing proposed jury instructions, and proposed findings of fact, as applicable:

Proposed Jury Instruction: No later than October 15, 2026.

Proposed Findings of Fact: N/A

## XIV. Length of Trial.

The Court has instructed the parties that they will have a total of two weeks (10 business days) for trial. The parties agree to continue discussions about trial length, agree to exchange in advance anticipated order of witnesses, and will make good faith efforts to determine if fewer trial days will be necessary. The parties will notify the court if agreement can be made, at the latest by the anticipated pretrial conference with Judge Bazis.

## XV. Trial Date.

Trial is set to commence November 9, 2026 and continue from day to day.

## XVI. Deposition Designations

If the parties intend to designate depositions for trial, the parties shall exchange deposition designations by September 28, 2026, counter-designations and objections to designations by October 5, 2026 and objections to counter-designations by October 12, 2026. If the parties intend to file any motions related to those objections (i.e., motions requesting rulings on objections), they shall be filed by October 19, 2026.

Dated this 5th day of October, 2026.

NATIONAL INDEMNITY COMPANY,

By: */s/ Michael A. Knoerzer*
Michael A. Knoerzer, Admitted PHV
Clyde & Co US LLP
2 Grand Central Tower
140 E 45th Street, Ste 26A
New York, New York 10017
Michael.Knoerzer@clydeco.us

Kevin J. O'Connor, Admitted PHV
265 Franklin St., Suite 802
Boston, MA 02110
Kevin.Oconnor@clydeco.us

and

Jason W. Grams, #24596
GRAMS LAW, LLC
1318 N 127th Ave.
Omaha, NE 68154
(402) 902-6400
jason.grams@grams.law

*ATTORNEYS FOR PLAINTIFF NATIONAL INDEMNITY COMPANY*

TIG INSURANCE COMPANY

By: */s/ Tyler J. Scott*
Scott L. Davis
SPENCER FANE LLP
2200 Ross Avenue, Suite 1700
Dallas, TX 75201
Telephone: (214) 750-3610
sdavis@spencerfane.com

Tyler J. Scott
1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
tscott@spencerfane.com

Josh C. Dickinson #23700
SPENCER FANE LLP
13815 FNB Parkway, Suite 200
Omaha, NE 68154
Telephone: (402) 965-8600
jdickinson@spencerfane.com

and

Michael K. Robles (Admitted Pro Hac Vice)
HUSCH BLACKWELL LLP
104 West 40th Street, Suite 400
New York, NY 10018
Telephone: (202) 378-5851
Michael.Robles@huschblackwell.com

*ATTORNEYS FOR DEFENDANT TIG INSURANCE COMPANY*

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge