IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NATIONAL INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>TIG INSURANCE COMPANY,<br><br>Defendant. | **8:22CV199**<br><br>**MEMORANDUM AND ORDER** |

This Matter is before the Court on Defendant TIG Insurance Company's ("TIG") Omnibus Motion in Limine.[1] (Filing No. 565.) For the reasons stated below, TIG's motion will be granted in part and denied in part.

## BACKGROUND

This is an action for declaratory relief and breach of contract regarding TIG's refusal to make payment on National Indemnity Company's ("National Indemnity") submitted reinsurance billings. (Filing No. 114.)

## DISCUSSION

**1. Unnecessary argument, testimony, or references to Berkshire Hathaway, Warren Buffet, and Charles Munger and any argument concerning the parties' respective locations or juror or community self-interest.**

[1]TIG requested a one-hour oral argument in its supporting brief to the motion pursuant to Nebraska Civil Rules 7.1(e) "given the multiple legal issues which are implicated by the Motion." (Filing No. 566 at 38.) The Court will deny this request.

It appears to be undisputed that National Indemnity is a wholly-owned indirect subsidiary of Berkshire Hathaway, Inc., and Berkshire Hathaway has long been managed by its former CEO and Chair,[2] Warren Buffett. (Filing No. 566; Filing No. 612.) It further appears to be undisputed that the President of National Indemnity, Donald Wurster, reported to Mr. Buffett for most of the relevant time periods in this case. (Filing No. 611-2; Filing No. 612.) TIG states in its brief in support of its motion that the exhibit list in this case includes correspondence between Mr. Wurster and Mr. Buffett. (Filing No. 566.) TIG's brief further states that Mr. Wurster discussed conversations with Mr. Buffett in his deposition. (Filing No. 566.) TIG notes in its brief that federal courts have granted motions in limine that excluded references to Berkshire Hathaway and Warren Buffett, citing examples of successful motions filed by entities owned by Berkshire Hathaway based on a "David and Goliath" concern given the size or financial condition of BNSF, Berkshire Hathaway, or Warren Buffet. *BNSF Ry. Co. on behalf of United States v. Ctr. for Asbestos Related Disease, Inc.*, No. CV 19-40-M-DLC, 2022 WL 18010332 (D. Mont. Dec. 30, 2022); *see Utica Mut. Ins. Co. v. Century Indem. Co.*, No. 6:13-CV-995, 2019 WL 4385765 (N.D.N.Y. Sept. 13, 2019). TIG also asserts in its brief that courts have excluded evidence and arguments based on the respective locations of parties or witnesses where a party or witness is local to the area where the trial will be held, which may evoke an improper "hometown" bias. (Filing No. 566.)

In response, National Indemnity argues that the cases TIG cited do not support the issuance of a sweeping and preemptive order that National Indemnity should be barred from referring to the fact that its President reported to Mr. Buffett of Berkshire Hathaway regarding the matters in question. (Filing No. 612.) National Indemnity argues in its brief that the cases cited by TIG involved motions in limine brought by the parties associated with Berkshire Hathaway, not their adversaries. (Filing No. 611-3; Filing No. 611-4; Filing No. 612.) For example, in *Utica*, Utica Mutual Insurance Company wanted to prevent a "David and Goliath" dispute against a large corporation with significant financial resources. This is not the situation we have in this case. Additionally, there is no dispute that Warren Buffett was sent correspondence by the president of National Indemnity regarding this claim. So, total exclusion of this information would not be appropriate.

[2]Warren Buffet stepped down as Chairman of Berkshire Hathaway on September 18, 2026.

To the extent TIG seeks to exclude evidence regarding Berkshire Hathaway, Warren Buffet, or Charlie Munger relevant to the claims and defenses at issue in this lawsuit, the motion is denied. The Court will rule on the admissibility of this evidence, upon appropriate objection, at trial. However, the motion in limine will be granted to exclude argument that improperly emphasizes that TIG is not from the State of Nebraska. *See Hopkins v. Integon Gen. Ins. Co.*, No. C18-1723 MJP, 2020 WL 3888253 (W.D. Wash. July 10, 2020).

**2. Witnesses, theories of liability, damages, and documents not disclosed by National Indemnity.**

TIG argues that allowing National Indemnity to present any evidence—whether it be witness testimony, theories of liability or damages, claims, or documents—that was not properly disclosed during discovery would result in unfair surprise and severely prejudice TIG by depriving it of the opportunity to conduct meaningful discovery. (Filing No. 566.) In response, National Indemnity argues, inter alia, that TIG offers no evidence that National Indemnity plans to change any theories or liability or introduce any documents not previously produced; thus, the motion is pure speculation and, in any event, premature. (Filing No. 612.)

Undisclosed information and witnesses are subject to Fed. R. Civ. P. 37(c)(1), which provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Because TIG did not identify specific witness testimony, theories of liability or damages, claims, or documents in its supporting brief to the motion that National Indemnity may present, the motion will be denied at this time[3]. The Court will rule on the admissibility of this evidence, upon appropriate objection, at trial. The Court will note, and rulings on other motions in limine have emphasized, this Court's requirement that the parties abide by the discovery and disclosure rules.

[3]The Court acknowledges that TIG would be unaware of information or witnesses that have not been disclosed.

**3. Testimony or evidence regarding the New Hampshire Suit or its dismissal, and any argument that the filing of the New Hampshire Suit constitutes bad faith or a breach of contract.**

TIG argues that National Indemnity never asserted a claim for bad faith against TIG; and the filing of the New Hampshire Suit is immaterial to National Indemnity's actual causes of action and arguing otherwise is misleading, highly prejudicial, and could create jury confusion. (Filing No. 566.) In response, National Indemnity argues that is entitled to introduce evidence that TIG breached the Certificate by disputing coverage even before it received a claim. (Filing No. 612.) To the extent TIG seeks to exclude evidence relevant to the claims and defenses at issue in this lawsuit, the motion is denied. The Court will rule on the admissibility of this evidence, upon appropriate objection, at trial.

**4. Legal opinions offered by fact or expert witnesses.**

TIG argues that it anticipates National Indemnity may attempt to introduce legal opinions at trial, whether through lay or expert witnesses, particularly regarding whether TIG complied with legal obligations, acted in good faith, or properly interpreted contractual provisions, and argues that such testimony would be improper and inadmissible. (Filing No. 566.) In response, National Indemnity argues that TIG offers no basis for its anticipation, which National Indemnity denies, and further argues that such speculative motions are overbroad and premature. (Filing No. 612.)

It is well-established that lay witnesses and experts may not testify to legal opinions. *See* *United States v. Ness*, 665 F.2d 248, 250 (8th Cir. 1981) (where lay witness opinion testimony proffered necessarily encompasses legal conclusion, trial court may properly conclude that response would not be helpful to trier of fact); *United States v. Klaphake*, 64 F.3d 435, 438-39 (8th Cir. 1995) (questions of law are the subject of the court's instructions and not the subject of expert testimony) (citations omitted). Therefore, the Court will not allow any witness to testify to legal conclusions. However, the Court finds it appropriate to address the content of the witnesses' testimony in the trial setting. Accordingly, TIG's motion to the witnesses' testimony on the basis that it consists of improper legal opinions is denied and will be addressed during their testimony at trial, upon proper objection by TIG.

**5. Argument or suggestion that because of its limited affiliation with Riverstone International, (a) TIG is imputed with Riverstone International's possession and knowledge of the Fortress Re facultative reinsurance for the Montana Policy or (b) TIG should have known the Fortress Re facultative reinsurance or breach of the Warranty of Retention sooner.**

TIG has withdrawn this motion in limine. (Filing No. 576 at 2; Filing No. 624 at 9.)

**6. Evidence or arguments concerning settlements or payments by other reinsurers.**

TIG argues that evidence or argument concerning payments or settlements by other reinsurers should be excluded because it is irrelevant and would confuse the jury about the standard for liability and could lead the jury to decide the issues on other improper bases. (Filing No. 566.) In response, National Indemnity asserts that it has no intention of disclosing the details of any reinsurers' voluntary payments to National Indemnity, other than TIG's own voluntary and late partial payment. (Filing No. 612.)

It appears the parties agree on this issue. The Court agrees with TIG's arguments and its motion on this issue will be granted.

**7. Arguments, testimony, or other evidence attempting to interpret or challenge or that are contrary to the findings, determinations, and conclusions of the trial court's summary judgment orders affirmed by the Montana Supreme Court, or otherwise relitigating those findings and decisions.**

TIG argues that National Indemnity must be bound by the findings of the Montana courts in the Coverage Action National Indemnity brought against the State of Montana and cannot relitigate: (1) the findings of those courts regarding National Indemnity's conduct giving rise to its rulings, i.e., its handling of the State of Montana's claim for coverage; (2) the rulings issued by the courts that National Indemnity breached its duty to defend; or (3) the rulings of those courts regarding the impacts of National Indemnity's breaches. (Filing No. 566.) In response, National Indemnity argues that TIG did not—and could not—identify a single instance in which National Indemnity relitigated or reargued the Montana Supreme Court decision, and its motion should be denied as premature. (Filing No. 612.)

In 2021, the Montana Supreme Court affirmed in part and reversed in part decisions by the Montana District Court relating to National Indemnity's obligations to the State of Montana for the Libby Mine claims, concluding that National Indemnity breached its duty to defend the State of Montana by its offer of a "pro-rata" defense and its delay in filing a declaratory judgment action; National Indemnity was precluded from raising coverage defenses; and National Indemnity was responsible for attorney fees, costs, and prejudgment interest as a result of its breaches. *National Indemnity v. State of Montana*, 499 P.3d 516 (Mont. 2021); *see also* *Orr v. State of Montana*, 106 P.3d 100 (Mont. 2004). In its Summary Judgment Order, this Court concluded that the only extra-contractual damages that TIG was not required to pay were prejudgment interest and the State's attorney's fees. (Filing No. 571 at 43.) The only issue this Court left open as to the issue of extra-contractual damages was that of post-judgment interest, which will be determined at the outcome of the trial.

TIG's motion in limine on this ground is granted, and arguments, testimony, or other evidence attempting to interpret, challenge, or that are contrary to the findings, determinations, and conclusions of the Montana courts in relation to this case, or otherwise relitigating those findings and decisions will be excluded.

**8. Testimony, reports, records, and other evidence concerning the injuries to mine workers and the culpability of the State of Montana with respect to those injuries.**

TIG argues, inter alia, that all inspection reports, injury records, and other testimony and evidence regarding injuries to the mine workers or the culpability of the State of Montana should be excluded. (Filing No. 566.) In response, National Indemnity argues the inspection reports, death certificates, and injury reports are directly probative of the number of occurrences, and requests the Court deny the Motion and address the objections at trial with the full context. (Filing No. 612.)

TIG is challenging that there were 27 occurrences. As this Court has previously stated, TIG has admitted through evidence and its 30(b)(6) witness that National Indemnity provided sufficient proof of 21 occurrences. TIG also indicated in the telephone conference with the parties on October 19, 2026 that it conceded the factual predicate as to the 21 occurrences. (Filing No. 611-5; Filing No. 715.) However, TIG is disputing the other six occurrences. National Indemnity

must then provide proof of these other occurrences and that they would be an occurrence under the certificate. Therefore, this information appears to be relevant to prove these additional occurrences. Additionally, at the October 19 telephone conference, TIG indicated to the Court that it may seek to admit some of the inspection reports. (Filing No. 715.) Thus, TIG's motion as to this issue will be denied, and the Court will rule on the admissibility of the identified evidence upon appropriate objection, during trial.

**9. National Indemnity's currently proposed Rule 1006 Summaries as well as any purported Rule 1006 summaries that are not a true and accurate representation of the underlying evidence, or which are argumentative, misleading, or which includes assumptions, arguments, conclusions, or interpretations not supported by the underlying evidence; and any Rule 1006 summaries for which the underlying documents are not admissible.**

TIG argues, inter alia, that because of the timing of the production of the documents, it did not fully have the opportunity to review them in connection with National Indemnity's request for admission of the summaries, and National Indemnity has yet to establish the foundation for its summaries or that the underlying documents—checks or bank records, documents supporting payments by the State of Montana, and documents identified in the list of alleged potential occurrences—are admissible. (Filing No. 566.) In response, National Indemnity argues that TIG had 6.5 months to review the Rule 1006 summaries and documents, and to the extent TIG maintains its objections and seeks to have National Indemnity independently lay foundation for thousands of individual checks, bank records, payments, and potential occurrences, it will be prepared to do so at trial. (Filing No. 612.)

"Rule 1006 allows a party to 'use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.'" *Petrone v. Werner Enters., Inc.*, 42 F.4th 962, 969 (8th Cir. 2022). For a Rule 1006 summary to be admitted, the proponent of the summary must establish that the underlying materials are themselves admissible in evidence. *Ford Motor Co. v. Auto Supply Co.*, 661 F.2d 1171, 1175 (8th Cir. 1981). The rule further contemplates that a summary will be admitted instead of, not in addition to, the documents it summarizes. *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997) (citations omitted). In addition, the proponent must make the underlying materials available for review, and, crucially, the summary "must be an *accurate* summarization of the

underlying materials involved." *White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1070 (W.D. Mo. 1985) (emphasis in original). The summary must be prepared by a witness available for cross-examination, not by the lawyers trying the case, *Grajales-Montoya*, 117 F.3d at 361 (citation omitted), and may include assumptions and conclusions based upon evidence in the record, *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005).

TIGs should have now had sufficient time to review the underlying documents that are the basis of the summaries. However, the Court has no updated information as to whether TIG still has any issues with the underlying documents. Additionally, TIG has not brought any specific issue about a specific document before the Court. Therefore, it is premature for the Court to rule on this issue. As to TIG's foundation argument regarding the underlying documents that make up the summaries, provided TIG is still making this argument, the Court will deal with the appropriate objection to the specific underlying documents at trial.

The Court notes that TIG does not make an argument as to who prepared the document and will be a witness at trial regarding the preparation, and it is unclear to the Court who prepared these summaries. The Court cautions National Indemnity that it should not be any of the lawyers that are trying this case.

Thus, TIG's motion in limine regarding this issue is denied subject to National Indemnity's ability to lay the appropriate foundation at trial for the admission of the Rule 1006 summaries.

Accordingly,

**IT IS ORDERED** that TIG's Motion in Limine (Filing No. 565) is granted in part and denied in part:

1. "Hometown" arguments emphasizing that TIG is not from the State of Nebraska will be excluded. The remaining portion of this motion in limine is denied.
2. Evidence or arguments concerning settlements or payments by other reinsurers will be excluded.
3. Evidence attempting to challenge or that are contrary to the findings, determinations, and conclusions of the Montana courts in relation to this case, or otherwise relitigating those findings and decisions will be excluded.
4. All other motions in limine are denied.

5. Request for oral argument is denied.

Dated this 2nd day of November, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge