IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NATIONAL INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>TIG INSURANCE COMPANY,<br><br>Defendant. | **8:22CV199**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on Plaintiff National Indemnity Company's Motion to Strike TIG Insurance Company's Supplemental Disclosures and Responses Pursuant to Federal Rule of Civil Procedure 16 (Filing No. 538). The motion seeks to strike untimely supplemental discovery disclosures and responses and compel TIG to produce responsive information that was allegedly withheld on the grounds of attorney-client privilege. The motion will be granted in part and denied in part.

## FACTUAL BACKGROUND

The Amended Final Progression Order was entered in August, 2023 and provides, in relevant part:

> 3) The deadline for serving initial mandatory disclosures under Rule 26(a)(1) is **October 2, 2023**.
> …
> 6) The deadline for completing written discovery under Rules 33, 34, 36 and 45 of the Federal Rules of Civil Procedure is **February 6, 2024**. Motions to compel written discovery under Rules 33, 34, 36 and 45 must be filed by **February 20, 2024**[1]**.**
>
> **Note:** A motion to compel, to quash, or for a disputed protective order shall not be filed without first contacting the chambers of the undersigned magistrate judge to set a conference for discussing the parties' dispute.

[1] The deposition deadline as to the depositions of two witnesses only was extended to September 6, 2024. (Filing No. 354).

> …
> 7) The deadlines for identifying expert witnesses expected to testify at the trial, (both retained experts, (Fed. R. Civ. P. 26(a)(2)(B)), and non-retained experts, (Fed. R. Civ. P. 26(a)(2)(C)), are:
>
> For the plaintiff(s): **April 22, 2024**[2]
> For the defendant(s): **June 3, 2024**
> Rebuttal: **June 10, 2024**
>
> 13) All requests for changes of deadlines or settings established herein shall be directed to the undersigned magistrate judge. Such requests will not be considered absent a showing of due diligence in the timely progression of this case and the recent development of circumstances, unanticipated prior to the filing of the motion, which require that additional time be allowed.

Also relevant to National Indemnity's Motion is Rule 16, which provides that a progression order may be modified upon "good cause" shown. Fed. R. Civ. P. 16(b)(4).

On February 19, 2025, TIG announced that it had engaged additional counsel to the case. (Filing No. 498). On March 28, 2025, TIG submitted a variety of additional discovery information, including (1) Supplemental Rule 26(a)(1) Initial Disclosures ("Supplemental Initial Disclosures") (Filing No. 540-2); (2) Supplemental Rule 33 and 36 Responses to Plaintiff's First Set of Interrogatories ("Supplemental Responses") (Filing No. 540-3); and (3) Supplemental Rule 26(a)(2)(A) Expert Identification Disclosures ("Supplemental Expert Disclosures") (Filing No. 540-4). The court will refer to these disclosures collectively, as the "Disputed Disclosures".

National Indemnity moved to strike TIG's Disputed Disclosures. (Filing No. 538). The motion also asked the court to compel TIG to produce responsive information that may have been withheld on the grounds of privilege. (Filing No. 538). The parties did not request oral argument, and the court considers the motion ready for ruling.

## DISCUSSION

It is undisputed that TIG's Disputed Disclosures were served long after the deadlines of the Amended Final Progression Order, and TIG has never moved to change any deadlines prior to filing the Disputed Disclosures (Filing No. 222). In its Motion to Strike[3], National Indemnity argues that all information should be stricken because TIG has not shown that good cause exists to justify the Disputed Disclosures. *See* Fed. R. Civ. P. 16. TIG argues generally that National Indemnity has

[2] The deadlines for identifying expert witnesses expected to testify at trial were amended pursuant to a May 5, 2024 order to June 21, 2024 for the defendants, and June 28, 2024 for rebuttal. (Filing No. 301).
[3] This matter comes on National Indemnity's motion to strike TIG's supplemental disclosures and discovery responses, and not a motion in limine seeking to prevent the introduction of the Disputed Disclosures at trial.

mischaracterized the belated filings; that National Indemnity has long known the facts, defenses, documents, and opinions reiterated in TIG's supplements; and that the Disputed Disclosures were merely a good faith effort to supplement incomplete information following the deposition phase of discovery. (Filing No. 543 at 6). In other words, TIG maintains that the Disputed Disclosures were either permissible Fed. R. Civ. P. 26(e)(1)(A) supplemental disclosures, or merely clarifications to its original disclosures that did not materially alter them. *Compare Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 976 (8th Cir. 2013).

National Indemnity also asks for an order to compel TIG to produce responsive information that may have been withheld on the grounds of privilege and argues that the Post-Deadline Disclosures improperly reintroduce the assertion of the attorney-client privilege and work product doctrine. (Filing No. 538).

## I. National Indemnity's Motion to Compel

Because it is central to National Indemnity's motion, the court will first address the request[4] for the court to compel TIG to produce responsive information allegedly withheld from its answers to Interrogatory Nos. 1, 2, 4, and 5 and to require counsel for TIG to assure that it is not improperly withholding information on the basis of attorney-client privilege. (Filing No. 538 at 2). TIG responds that National Indemnity "feigns a privilege-related discovery dispute that does not exist and demands assurances that counsel for TIG already provided." [5](Filing No. 543 at 7). The court agrees that the motion to compel is moot.

Following National Indemnity's motion, TIG served another disclosure, TIG's Second Supplemental Responses to Plaintiff's First Set of Interrogatories dated April 16, 2025 ("Second Supplemental Responses") (Filing No. 548-1). TIG removed its specific attorney-client privilege objection to Interrogatories 1, 2, 4, and 5, but added a general objection based on the attorney-client privilege that states: "TIG objects to each Interrogatory to the extent it seeks information that is protected from discovery by the attorney-client privilege, work product doctrine, consulting expert exemption, joint defense privilege, common interest privilege, or any other applicable privilege,

[4] The court notes that the Amended Final Progression Order in this case states, as relevant here, that "A motion to compel. . . shall not be filed without first contacting the chambers of the undersigned magistrate judge to set a conference for discussing the parties' dispute." (Filing No. 222). No such procedure was followed here.

[5] TIG indicates they inadvertently added the additional facts and clarifying information to their original responses to Plaintiff's First Set of Interrogatories, rather than their amended responses. (Filing No. 543 at 21). National Indemnity in its reply accepted TIG's acknowledgement of this error and its assurances that it was not withholding any documents on the basis of privilege in response to Interrogatories 1, 2, 4 and 5. (Filing 547 at 10).

immunity, protection, or restriction on discoverability." (Filing No. 548-1 at 2). TIG also clarified in the Second Supplemental Responses that "it is not asserting new privilege objections." (Filing No. 548-1 at 1).

As National Indemnity acknowledges, "[l]ong ago[6], after a meet and confer, TIG … agreed to withdraw assertions of privilege with respect to these Interrogatories." (Filing No. 539). TIG has advised that it "did not intend to change its position on the attorney-client privilege and is not withholding any new information" (Filing No. 543 at 19-21). TIG's Second Supplemental Responses conform to the substance and format of prior objections in the amended responses to which National Indemnity never objected (Filing No. 548-1). National Indemnity also seems to acknowledge that "TIG has removed its specific attorney-client privilege objection." (Filing No. 547 at 1). Because counsel for TIG has already provided the assurances requested in National Indemnity's motion and TIG has served supplemental responses restoring the general objections in place since the parties conferred in 2024, National Indemnity's motion to compel is denied as moot.

## II. National Indemnity's Motion to Strike TIG's Disputed Disclosures

Turning to TIG's other Disputed Disclosures, Federal Rule of Civil Procedure 26 imposes various duties on litigants to search for and disclose information during discovery. Rule 26(a) states that a party must provide "the name ... of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). The rule also requires the disclosing party to provide "a copy—or a description by category and location—of all documents ... that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Further, Rule 26(e) requires a party to supplement or correct these disclosure "in a timely manner if the party learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Under Rule 16, a court " 'must issue a scheduling order' and such order 'must limit the time to...complete discovery [ ] and file motions." *Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 434 (8th

[6] Indeed, in a March 1, 2024 pre-dispute letter to the court, TIG stated in a letter to the court that it "did not withhold any information from its Response to Interrogatory No. 1 based upon privilege" (Filing No. 540-5).

Cir. 2019) (quoting Fed. R. Civ. P. 16(b)(1), (3)(A)). "Adherence to progression order deadlines is critical to achieving the primary goal of the judiciary: 'to serve the just, speedy, and inexpensive determination of every action.' " *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (quoting Fed. R. Civ. P. 1). "Accordingly, the district court has broad discretion in establishing and enforcing the deadlines." *Id.* (citing Fed. R. Civ. P. 16). After a scheduling order[7] is issued under Fed. R. Civ. P. 16(b)(1), the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good-cause standard is not optional." *Petrone,* 940 F.3d at 434 (citing *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008)). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements...., [but the] 'existence or degree of prejudice to the party opposing the modification' and other factors may also affect the decision." *Ollie v. Nebraska Methodist Health System, Inc.*, 2022 WL 4586421 (D.Neb. Sept. 29, 2022) (citing *Bradford v. DANA Corp.,* 249 F.3d 807, 809 (8th Cir. 2001)). In general, the court will not consider prejudice, or the lack thereof, if the movant has not been diligent in meeting the scheduling order's deadlines. *Sherman*, 532 F.3d at 716-17) (noting that there may be no need to explore beyond the first criterion of diligence when the record shows only minimal efforts to satisfy the scheduling order requirements) (internal quotations and citation omitted).

Although at no point in its motion has National Indemnity asked to exclude evidence in the Disputed Disclosures at trial, the court notes that Rule 37 provides the consequences for failure to provide information or identify a witness as required by Rule 26(a) or (e). *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018) ("The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37.") "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The burden is on the potentially sanctioned party to prove harmlessness or justification. *Vanderberg*, 906 F.3d at 705. "Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the failure to comply with Rule 26(a)." *Vanderberg*, 906 F.3d at 705.

[7] "In this district, a scheduling order under Federal Rule of Civil Procedure 16(b) is called a 'Case Progression Order.'" NECivR 16.1.

The court will discuss each of the changes identified by National Indemnity in turn:

**(1) TIG's Disputed Supplemental Rule 26(a)(1) Initial Disclosures**

Initial mandatory disclosures under Rule 26(a)(1) were due to be filed before or on October 2, 2023 (Filing No. 222). All discovery was to be completed by August 28, 2024[8]. (Filing No. 222; Filing No. 301; Filing No. 352). TIG's March 28, 2025 Supplemental Initial Disclosures added several disclosures that National Indemnity identifies as potentially prejudicial, including the addition subjects to the knowledge of fact witness William Bouvier and Steward Richmond, the identification of 13 witnesses not previously identified as witnesses by TIG, and introduction of 11 new categories of documents. (Filing No. 540-2).

**a) William Bouvier's knowledge**

William Bouvier is a former TIG employee who had already been disclosed as a witness with knowledge of subjects including: (a) TIG's communications with National Indemnity regarding the Reinsurance Claim; (b) TIG's analysis of the information provided by National Indemnity regarding the Reinsurance Claim; and (c) TIG's determination that National Indemnity's cession of the Reinsurance Claim did not comply with the terms and conditions of the Reinsurance Contract. (Filing No. 544-3 at 2). National Indemnity argues that Bouvier was within TIG's control and there is no good cause for belatedly revising the initial disclosures. TIG argues that its supplemental disclosures simply clarified that Bouvier would have knowledge of Riverstone's and TIG's reinsurance operations and the nature of reinsurance and reinsurance relationships generally as well as the amounts payable under the TIG certificate – the core issue in the case. (Filing No. 540-2, Filing No. 543 at 10). TIG also observes that Bouvier is not an expert witness, and irrespective of the level of detail in any supplemental disclosures, fact witnesses must always testify to any known facts. *See* Fed. R. Evid. 602.

The court agrees with National Indemnity that TIG may not turn fact witnesses into "quasi-expert witnesses" and will not allow TIG to circumvent expert designation rules. However, TIG's supplemental disclosure regarding Bouvier's knowledge merely clarifies the original disclosure in this case. The information has been known to all parties and is directly related to the originally-disclosed

---

[8] The deposition deadline was extended to September 6, 2024 for two individuals only. (Filing 354).

subject matter areas. National Indemnity's motion to strike is denied with respect to the disclosure of William Bouvier's knowledge.

**b. Stewart Richmond's knowledge**

Stewart Richmond is TIG's Rule 30(b)(6) witness and was originally disclosed as a witness with knowledge of subjects including (a) TIG's analysis of the information provided by National Indemnity regarding the Reinsurance Claim; and (b) TIG's determination that National Indemnity's cession of the Reinsurance Claim did not comply with the terms and conditions of the Reinsurance Contract. (Filing No. 544-3). National Indemnity moves to strike TIG's supplemental disclosure because it adds as a knowledge subject "the amounts payable under the TIG Certificate, including amounts paid." (Filing No. 540-2 at 2). The record shows that Richmond has testified in his deposition about this topic at length. (Filing No. 544-4). Since the supplemental initial disclosures summarized the deposition testimony of Mr. Richmond, TIG's 30(b)(6) witness, the court finds they were a Fed. R. Civ. P. 26(e)(1)(A) supplement of incomplete or incorrect information and will deny National Indemnity's motion with respect to this disclosure.

**c. Identification of 13 fact witnesses**

National Indemnity next moves to strike the identification of 13 witnesses in TIG's Supplemental Initial Disclosures. (Filing No. 540-2 at 2-4).

TIG's initial disclosures in 2023 identified several individuals as well as "[a]ny person identified in NICO's Rule 26(a)(1) Disclosure" and "[a]ny other person identified during discovery in this matter or in the Parties' Pretrial Statements." (Filing No. 544-3). The Supplemental Initial Disclosures, filed after the deadline for initial disclosures and after the close of discovery, added "[t]he following individuals who were either deposed or identified in the Rule 26(a)(1) initial disclosures of another party to this lawsuit," and listed the following witnesses: Dale Cockrell (also named as National Indemnity's witness), Bill (William) Gianoulias, J. Michael Gottschalk, Reed Grandgenett, Judy Harnadek, Keith Kaplan, Justice James Nelson, Debra Partington, Nancy Peters, Brad Rosen, Tom Ryan, Brian Snover, and Don Wurster. (Filing No. 540-2 at 2-4). TIG notes that all but four of the fact witnesses appear in National Indemnity's own disclosures[9]. (Filing No. 544-3). Of the remaining

[9] Although sanctions or exclusion of these witnesses have not been sought by National Indemnity, the court notes that the 1993 Advisory Committee notes to Rule 37 give examples of harmlessness in violations of Rule 26(e), including "late disclosures of a potential witness known to all parties" and "a trial witness already listed by the

four, Cockrell and Gianoulias were deposed and disclosed by Horace Mann, and Gianoulias, Cockrell, and Justice Nelson were discussed at length in depositions of National Indemnity's witnesses. (Filing No. 543 at 8). Partington was Horace Mann 30(b)(6) witness. (Filing No. 540-5).

TIG argues generally that, although discovery had ended, supplementation was appropriate or the witnesses' identification had otherwise been made known to the other parties through the discovery process. Fed. R. Civ. P. 26(e)(1)(A). National Indemnity admits that it has already deposed most of the fact witnesses named but argues that it would have deposed other witnesses or expanded the scope of deposition discovery had TIG timely revealed the relevance of these witnesses. (Filing No. 539 at 11). National Indemnity observes that TIG would not need to disclose any witnesses at all if it was able to rely on persons already known to the other parties. (Filing No. 547 at 5).

The court agrees with National Indemnity that while most of the individuals were known to the parties through the discovery process, it was not necessarily disclosed that they had knowledge with respect to TIG's claims and defenses. After all, witnesses with knowledge of other reinsurers' claims may not be assumed to have knowledge of TIG's claims. TIG's further fails to show why, if the witnesses were known, TIG was not on notice that the witnesses had potentially admissible information as to its claims and defenses, and why it did not supplement its initial disclosures prior to the close of discovery. TIG has not shown that its untimely disclosure merely clarified its prior disclosures or that the addition of witnesses were a supplement to incorrect or incomplete information pursuant to Fed. R. Civ. P. 26(e)(1)(A).

TIG took no steps to attempt to modify the progression order and does not argue there was good cause to modify the progression order, even if it had sought leave of court. It is clear from the discovery history between the parties that the disclosure of 13 fact witnesses in TIG's Supplemental Initial Disclosures was untimely and that there was no good cause shown to permit the progression order to be modified. See Fed. R. Civ. P. 16(b)(4). The court will disallow the identification of 13 witnesses in TIG's Supplemental Initial Disclosures.

**d. Introduction of 11 new categories of documents**

adverse party." Fed. R. Civ. P. 37. While this may apply to witnesses on National Indemnity's own disclosures, TIG may not use its blanket initial disclosure of "[a]ny other person identified during discovery in this matter" as carte blanche to piggyback off other defendants' discovery in this case.

National Indemnity also moves to strike from TIG's discovery disclosures 11 categories of documents added to TIG's Rule 26(a)(1)(A)(ii) disclosure based on their untimeliness (Filing No. 540-2 at 5-6). It appears to be uncontested that all documents related to the categories had already been produced prior to the disputed disclosures. The "new" categories included items produced by National Indemnity and other reinsurers as well as common disclosure categories such as documents identified in other parties' disclosures, documents in expert reports, exhibits to depositions, documents attached to any filing with the court, and documents produced in discovery. The court finds that the categories in the disclosures were encompassed by prior timely disclosures by TIG and the other parties. The supplementation of information otherwise made known to the opposing party as a matter of "clarity and convenience" does not violate Rule 26(e). *Fair Isaac Corp. v. Fed. Ins. Co.*, 337 F.R.D. 413, 421 (D. Minn. 2021).

**(2) TIG's Supplemental Rule 33 and 36 Responses to Plaintiff's First Set of Interrogatories**

The deadline for written discovery in this case was February 6, 2024 (Filing No. 222). TIG's March 28, 2025 Supplemental Responses (Filing No. 540-3) included several interrogatory responses that National Indemnity identifies as potentially prejudicial:

**a. TIG re-asserted attorney-client privilege.[10]**

As discussed above, this issue is moot. TIG has served supplemental responses restoring the general objections in place since the parties had conferred in 2024.

**b. Interrogatory No. 1**

National Indemnity argues that TIG's Supplemental Responses to National Indemnity's interrogatories included, in response to Interrogatory No. 1, a "lengthy and entirely ***new*** basis for TIG's failure to honor National Indemnity's claims." (Filing No. 547 at 8) (emphasis in original). Interrogatory No. 1 asked TIG to "[s]tate each reason TIG contends it does not owe [National Indemnity] the full amount billed to TIG in the reinsurance billing [located at various pages of National Indemnity's production]." TIG had originally responded as follows, in relevant part:

[10] This change, and TIG's subsequent amendment on this point, is discussed below in more detail with respect to National Indemnity's Motion to Compel

**Interrogatory No. 1:** State each reason TIG contends it does not owe [National Indemnity] the full amount billed to TIG in the reinsurance billing [located at various pages of [National Indemnity]'s production]."

**ANSWER:**

> . . .
> Subject to and without waiver of the foregoing objections and the General Objections, TIG answers as follows: On or about September 25, 2023, TIG paid [National Indemnity] the amount of $12,751,352 in connection with the reinsurance billing located at pages NICO-1725106–NICO-1725126 and NICO-1725222–NICO-1725788 of NICO's production (the "Reinsurance Billing"). The bases and reasons for TIG's determination that $12,751,352 was the correct amount owing under Facultative Certificate No. 0584 (the "TIG Certificate") are set forth in Stewart Richmond's September 25, 2023 letter to Donald F. Wurster, which is incorporated by reference herein.
>
> TIG further states it did not pay its putative share of:
>
> a. the six additional occurrences/limits that were included as part of the Reinsurance Billing because [National Indemnity]'s putative decision to allocate and bill reinsurers on the basis of 27 occurrences is unsupported, unreasonable, inappropriate and appears to have been concocted to maximize reinsurance recoverables;
> b. the amount ($9,191,091) [National Indemnity] purportedly allocated to "additional defense –potential exposure" that was in addition to the State of Montana's January 10, 2022 estimate of the future defense costs and expenses it would incur because that portion of the billing was unsupported, unreasonable, inappropriate and appears to have been concocted to maximize reinsurance recoverables; and
> c. the pre-judgment interest, the post-judgment interest and the State of Montana's attorneys' fees and expenses that [National Indemnity] was required to pay pursuant to and to satisfy the judgment in the underlying coverage action because such amounts are not covered under either the [National Indemnity] policy or TIG Certificate.

(Filing No. 650-6 at 2-3). TIG's Supplemental Response added the following:

> Answering further, [National Indemnity] failed to comport with customary industry claims handling practices for the underlying claims and failed to defend and settle certain underlying claims, leading to the judgment in the underlying coverage action and certain factual liability determinations in that judgment that resulted in, inter alia, extracontractual liability. [National Indemnity] failed to take actions that would have better protected both its insured and the reinsurers. [National Indemnity]'s conduct was unreasonable, not in good faith, and violated standards and obligations recognized by the industry and controlling law. This exposed [National Indemnity] to liabilities that were not covered by the Policy or reinsured under the TIG Certificate. [National Indemnity] then made determinations regarding defense costs, exhaustion, erosion, and number of occurrences, and subsequently allocated certain liabilities to the reinsurers that were unreasonable and that were contrary to the terms of the TIG Certificate,

[National Indemnity]'s duties and obligations to the reinsurers, and industry standard and practice. . . .

d. to the extent not encompassed in a. through c. above, [TIG further states it did not pay its putative share of] amounts for [National Indemnity]'s extracontractual liability arising from the court's finding that [National Indemnity] breached its duty to defend."

(Filing No. 540-3 at 2-3). TIG claims that its answer summarizing TIG's defenses to [National Indemnity]'s reinsurance billing is simply a reiteration of its prior positions and that it was going above and beyond its duty to supplement discovery responses. (Filing No. 543 at 18). TIG further argues that the Amended Final Progression order did not prohibit supplementing interrogatory responses after the close of discovery.

The purpose of TIG's supplementary answer is unclear to the court, whether it is an attempt to modify the answer because of incomplete or incorrect information. The court observes that the nonspecific language regarding the "judgment" and National Indemnity's "fail[ure] to defend and settle *certain underlying claims*" could be read to assert a new theory of TIG's defense depending on its meaning and breadth of the statements. Throughout this litigation, and as TIG's original answer to Interrogatory No. 1 shows, TIG has maintained that some of National Indemnity's billing was not covered by the TIG Certificate – including prejudgment interest, post judgment interest and State of Montana's attorney fees and expenses. (Filing No. 650-6 at 2-3). Yet TIG accepted that there were 21 occurrences under the TIG certificate. (Filing No. 650-6 at 2-3). If TIG's supplemental answer is a backdoor attempt to change TIG's positions or challenge the order on summary judgment, it is significantly too late to do so after the close of discovery. National Indemnity would be prejudiced by a new theory of defense at this stage in the litigation.

With respect to the emphasis on extra-contractual damages in the answer to this interrogatory, the court has already determined that the only damages that TIG is not required to pay because they are extra-contractual under the TIG Certificate are pre-judgment interest and the State of Montana's attorney's fees awarded because of National Indemnity's breach of the duty to defend. (Filing No. 571 at 38-45). The only issue the court left open as to the issue of extra-contractual damages is post-judgment interest, which will be determined at the outcome of the trial. (Filing No. 571 at 45). TIG may not relitigate prior rulings or expand its defenses at this point in this case through its answer to interrogatories or any other way.

TIG also supports its position that the answer is merely a clarification with deposition testimony and other filings in this case showing that TIG's positions were explored by National

Indemnity previously in this litigation. (Filing No. 543 at 14-15, Filing No. 544-14, Filing No. 544-15).

To the extent the supplemental answer to Interrogatory No. 1 completes TIG's incomplete answer, it is permitted as a supplement. However, the Court will not permit TIG to expand the scope of this litigation.

**c. Interrogatory No. 2**

The language added in response to Interrogatory No. 2 identifies individuals[11] shown through the discovery process to have knowledge of TIG's defenses and related facts described in its answer to Interrogatory No. 1. (Filing No. 540-3 at 3). As with TIG's disclosure of the identification of 13 fact witnesses, even if these individuals were known to all parties, their possession of information about TIG was not disclosed previously. National Indemnity's motion to strike will be granted with respect to TIG's supplemental response to interrogatory No. 2[12].

**(3) TIG's Disputed Supplemental Rule 26(a)(2)(A) Expert Identification Disclosures**

National Indemnity also objects to TIG's Supplemental Expert Disclosure concerning the cross-designation of Horace Mann Insurance Company's ("Horace Mann's) expert Paul C. Thomson III as TIG's own expert witness. (Filing No. 540-4). Like the other Disputed Disclosures, the Supplemental Expert Disclosure was filed after the deadline in the Amended Progression Order. (Filing No. 540-4, Filing No. 222, Filing No. 352). However, Thomson was previously designated as an expert by former defendant Horace Mann. (Filing No. 544-12). But TIG had not disclosed Mr. Thomson as its expert and Thomson never prepared a report on behalf of TIG. Thomson was deposed without revealing any association with TIG. (Filing No. 544-11 at 4:9-21). National Indemnity argues that it would suffer prejudice if Thomson were permitted now to testify on behalf of TIG. (Filing No. 539 at 12-13). In response, TIG argues that National Indemnity already knows the opinions of Thomson because Horace Mann already disclosed him and that, prior to his designation as TIG's expert witness, National Indemnity had already deposed Thomson. (Filing No. 543 at 1).

A district court has broad discretion in establishing and enforcing the deadlines in a Progression Order. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006). However, "[a] schedule

[11] TIG's supplemental answer to the interrogatory includes Paul C. Thomson III, whose disclosure as an expert witness will not be permitted per the analysis below.

may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *Marmo*, 457 F.3d at 759. The 8th Circuit has been clear that for disclosure of an expert witness, the good-cause standard is "not optional." *Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 434 (8th Cir. 2019). "[F]ailure to disclose in a timely manner is equivalent to failure to disclose." *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998). "To establish good cause, a party must show its diligence in attempting to meet the progression order." *Marmo*, 457 F.3d at 759."

The court notes that "[d]isclosing a person as a witness and disclosing a person as an expert witness are two distinct acts." *See KOKO Dev., LLC v. Phillips & Jordan, Inc.*, 101 F.4th 544, 548 (8th Cir. 2024). Expert witness disclosure requirements would be rendered meaningless "if a party could ignore them and then claim that the nondisclosure was harmless because the other party should have read between the lines." *KOKO Dev., LLC v. Phillips & Jordan, Inc.*, 101 F.4th 544, 548 (8th Cir. 2024) (quoting *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 704 (8th Cir. 2018)). "Litigants should not have to guess who will offer expert testimony; they need knowledge to conduct their own discovery and proffer responsive experts." *Vanderberg*, 906 F.3d at 704 (quoting *Cripe v. Henkel Corp*., 858 F.3d 1110, 1112 (7th Cir. 2017)).

The court agrees with National Indemnity that TIG has not shown good cause for TIG's late disclosure of Paul C. Thomson III as an expert witness. The disclosure is untimely and the court will enforce the deadline of the Amended Progression Order. In contrast to TIG's other supplemental disclosures that were in the nature of subsequently learned of or clarified information, its expert disclosure lacked any showing of good cause or diligence in attempting to meet the progression order's requirements. Although Horace Mann and TIG are both reinsurers, their positions are materially different and involve different reinsurance agreements, claim payment, and defenses. Thomson was already deposed as to Horse Mann and did not disclose any affiliation with TIG.

National Indemnity's motion will be granted with respect to TIG's Supplemental Rule 26(a)(2)(A) Expert Identification Disclosures. Having concluded that TIG's expert witness disclosure violates Rule 26(a)(2), the court anticipates that any expert testimony offered by Thomson may be subject to Rule 37(c)(1). *See Vanderberg*, 906 F.3d at 704.

Accordingly,

**IT IS ORDERED** that Plaintiff National Indemnity Company's Motion to Strike TIG Insurance Company's Supplemental Disclosures and Responses Pursuant to Federal Rule of Civil Procedure 16 (Filing No. 538) is granted in part and denied in part:

1. National Indemnity's motion to compel based on the assertion of attorney-client privilege is denied as moot;
2. National Indemnity's Motion to Strike with regard to TIG's Supplemental Rule 26(a)(1) Initial Disclosures will be granted in part and denied in part. Untimely identification of witnesses will not be permitted;
3. National Indemnity's Motion to Strike with regard to TIG's Supplemental Rule 33 and 36 Responses to Plaintiff's First Set of Interrogatories Initial Disclosures will be granted in part and denied in part. TIG's untimely answer to Interrogatory No. 2 will not be permitted;
4. National Indemnity's Motion to Strike with regard to TIG's Supplemental Rule 26(a)(2)(A) Expert Identification Disclosures will be granted. TIG will not be permitted to designate Thomas as an expert witness.

Dated this 2nd day of November, 2026.

BY THE COURT:

Susan M Bazis

Susan M. Bazis
United States District Judge