IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NATIONAL INDEMNITY COMPANY,

Plaintiff,

vs.

TIG INSURANCE COMPANY,

Defendant.

**8:22CV199**

**MEMORANDUM AND ORDER**

This matter is before the Court on National Indemnity's Motion in Limine Regarding Expert Witnesses. (Filing No. 475.) For the reasons explained below, the Motion will be denied.

**DISCUSSION**

National Indemnity moves to exclude the expert testimony of John Chaplin ("Chaplin") and Robert Kuehn ("Kuehn") pursuant to Federal Rule of Evidence 702.[1] Rule 702 and *Daubert* govern the admissibility of expert testimony and give the Court a gatekeeping responsibility to ensure that all expert evidence is relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *United States v. Merrell*, 842 F.3d 577, 582 (8th Cir. 2016). Rule 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may give opinion testimony if the party offering their testimony demonstrates their "specialized knowledge will help the trier of fact" and their opinions are "based on sufficient facts or data," are "the product of reliable principles and methods," and "reflect[ ] a reliable application of the principles and methods to the facts of

[1]National Indemnity's motion also asks the Court to exclude the expert testimony of Paul Thomson ("Thomson"). National Indemnity's request in this regard is moot as Thomson's testimony will be excluded by separate order due to his late disclosure.

the case." Fed. R. Evid. 702. Thus, to be admissible, expert testimony must be "useful to the finder of fact in deciding the ultimate issue of fact," the witness must be "qualified to assist the finder of fact," and the proposed testimony must be "reliable or trustworthy in an evidentiary sense."[2] *Acad. Bank, N.A. v. AmGuard Ins. Co.*,116 F.4th 768, 790 (8th Cir. 2024) (quotation omitted).

Courts must be mindful that Rule 702 "is one of admissibility rather than exclusion." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted). Therefore, "exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (quotation omitted). The proponent of the expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. *Lauzon*, 270 F.3d at 686.

**1. John Chaplin**

Chaplin's report states that he was retained by TIG to "provide expert testimony regarding the terms and conditions of and scope of the coverage" provided under the facultative certificate. (Filing No. 477-8.) Chaplin's views are "based upon 47 years in the business of insurance and reinsurance with practical experience transacting, teaching, researching and, now, consulting in the field of reinsurance and insurance dispute resolution." (Filing No. 477-8.) Chaplin's report describes concepts used in the reinsurance industry; touches on his familiarity with Skandia (TIG's predecessor); and explains custom and practice related to the placement of facultative certificates, including a discussion of the reinsurance placement in this specific case. (Filing No. 477-8.) TIG summarizes that Chaplin will provide expert testimony regarding: (1) the different types of "following" concepts under reinsurance custom and practice, and the extent to which the

[2] Rule 702 was amended in 2023 "'to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule.'" *Sprafka v. Med. Device Bus. Servs., Inc.*, 139 F.4th 656, 660 (8th Cir. 2025) (quoting Fed. R. Evid. 702, Advisory Committee's Note to 2023 Amendment). After that amendment, "courts continue to have a gatekeeping role to assure that evidence admitted in a case is both relevant and reliable." *Id.* at 661 (quoting *Acad. Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 790 (8th Cir. 2024)).

facultative certificate includes these concepts;[3] (2) the types of contract-related documents in TIG's underwriting file, and how the placement, negotiation and underwriting of the facultative certificate would have customarily proceeded given the documents in the file; and (3) the underwriting rationale for a retention warranty.[4] TIG represents that Chaplin's expert testimony is limited to matters of reinsurance custom and practice and how reinsurance professionals would have understood the terms and conditions of the facultative certificate at the relevant time. (Filing No. 500.)

National Indemnity argues that Chaplin should be precluded from offering expert testimony because he purports to testify regarding questions of law as to the scope of coverage under the facultative certificate. The parties agree that expert testimony regarding industry practices or standards is often relevant and necessary in cases such as this one. *See Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 340, 344 (8th Cir. 2009) ("Industry-wide practices are relevant to the question of whether an insurer acts within acceptable boundaries based on information it has received in a given case."); *see also Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74, 78 (2d Cir. 1995) ("[I]t is hard to imagine how [a case involving the interpretation of a facultative certificate] could have been decided without admitting evidence of custom and practice"). They disagree, however, regarding the intended scope of Chaplin's testimony.

It is well-established that expert testimony on legal matters is not admissible. *See United States v. Klaphake*, 64 F.3d 435, 438-39 (8th Cir. 1995); *see also Cowden v. BNSF Ry. Co.*, 980 F. Supp. 2d 1106, 1118 (E.D. Mo. 2013) ("[A]lthough expert witnesses may embrace an ultimate issue in their testimony, they may not state legal standards or draw legal conclusions by applying law to the facts.") (citation omitted). At this point, however, the Court is not persuaded that Chaplin's testimony is entirely inadmissible legal opinion as the distinction between admissible

[3] The Court previously determined that the certificate only includes a following form clause. (Filing No. 571 at CM/ECF p. 53.)

[4] The Court ruled in its summary judgment order that TIG cannot rely on National Indemnity's alleged breach of the retention warranty to deny coverage and dismissed TIG's breach of warranty defense. (Filing No. 571.) Therefore, the retention warranty issue is not relevant for purposes of trial.

expert testimony and impermissible legal opinion is not always apparent.[5] The Court agrees with National Indemnity, however, that some of Chaplin's proposed testimony could potentially cross the line into legal opinion. To be clear, experts will not be allowed to testify as to questions of law, which would include—for instance—legal opinion as to whether coverage existed under the certificate, to what extent (if any) that coverage existed, or any interpretation of court opinions or how those opinions should be applied in this case. The Court finds it appropriate, however, to address the content of Chaplin's testimony in the trial setting, upon proper objection during trial.[6]

National Indemnity further argues Chaplin's testimony should be barred as unreliable because the factual narrative Chaplin relied upon and incorporated into his report includes factual inaccuracies. National Indemnity points out that Chaplin wrongly stated (or assumed) that (1) "seasoned, experienced, professionals" were involved in drafting the facultative certificate; (2) there is evidence that National Indemnity received documents showing that TIG sought a retention warranty; and (3) the facultative certificate contains a "clearly cited" retention warranty. (Filing No. 477-8.) To highlight these errors, National Indemnity points out that after Chaplin was deposed, he prepared a supplemental declaration "conceding" that facts recited in his report were wrong. (Filing No. 581; Filing No. 526-4.).[7] TIG maintains, however, that Chaplin does not intend

---

[5] The parties are largely making the same arguments pertaining to the other's expert witnesses in their respective motions in limine. National Indemnity argues that TIG's experts who are opining as to industry standards and customs are providing legal opinions, and TIG is similarly complaining that National Indemnity's expert opining as to industry standards and customs is providing legal opinions. This only reinforces the Court's point that the subject of this lawsuit does not allow expert testimony to neatly fit into one category over the other.

[6] To the extent National Indemnity is concerned that improper legal conclusions are contained in expert reports themselves, such concern is unnecessary. Expert reports are typically inadmissible at trial as hearsay. *See* *Live Face On Web, LLC v. Integrity Sols. Grp., Inc.*, 421 F.Supp.3d 1051, 1065 (D. Colo. 2019) (stating that generally, expert reports or portions of those reports are not admitted into evidence because they are "rife with hearsay"); *Jones v. Royal Caribbean Cruises, Ltd.*, No. 12–20322–CIV, 2013 WL 8695361, at *2 (S.D. Fla. Apr. 4, 2013) (finding that the expert's written report was not admissible at trial because the expert was expected to testify in person, but could be used to refresh his recollection, if necessary); *Neagle v. Ill. Tool Works, Inc.*, No. 1:08-cv-2080-WSD, 2011 WL 13173913, at *1 (N.D. Ga. Feb. 11, 2011) (stating that expert reports are generally inadmissible because they are hearsay).

[7] The supplemental declaration does not expressly "concede" anything. Rather, its purported intent was to clarify remarks Chaplin made in his Declaration. The supplemental declaration states:

> The purpose of Paragraphs 3 through 6 of my Declaration was to identify the types of binding, confirming and other contractual-type documents that were in the Skandia underwriting file, and how the placement, negotiation and underwriting of the Skandia facultative certificate would have customarily proceeded given those and other documents in the Skandia underwriting file. I have no

to provide affirmative testimony regarding what actually transpired when the facultative certificate was placed but rather will testify regarding how the placement of the certificate would have *customarily proceeded*. (Filing No. 500) (emphasis added.)

Having considered and reviewed Chaplin's report in its entirety, the Court does not believe Chaplin's opinion is so fundamentally lacking in substance that it should be entirely excluded. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004). *United States v. Perry*, 61 F.4th 603, 606 (8th Cir. 2023) ("The question of the expert's credibility and the weight to be accorded the expert testimony are ultimately for the trier of fact to determine.") (quoting *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990)). The Court finds that any weaknesses in Chaplin's opinion, including the accuracy of underlying facts, can be explored during cross-examination and that wholesale exclusion of his opinion is not warranted in this case. *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 778 (8th Cir. 2021) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of addressing shaky but admissible evidence.") (internal quotation omitted). Therefore, National Indemnity's motion to exclude Chaplin's testimony will be denied.

**2. Robert Kuehn**

According to Kuehn's expert report, he was retained to provide "expert opinions regarding certain insurance and reinsurance custom and practices associated with claim related issues in dispute between [TIG] and [National Indemnity]." (Filing No. 477-10.) Specifically, Kuehn maintains he will opine on:

---

> personal knowledge regarding, and did not intend to offer affirmative testimony, that any of the documents discussed in those paragraphs was sent or received on any particular day.
>
> I do not have any specific knowledge or information regarding when Skandia provided a copy of its facultative certificate to [National Indemnity]'s broker, Sterling. The intent of paragraph 6(f) of the Declaration was to convey that it was customary in the facultative reinsurance market for facultative reinsurers to promptly provide copies of their certificates to the broker once they have been issued.

(Filing No. 526-4.)

> [A] number of interrelated industry customs and practices applicable to insurance and reinsurance in general, and with respect to mass tort liabilities, including: a) difference between the concept of "following form" coverage and the reinsurance concept of "follow the settlements"; and b) certain industry customs and practices regarding the appropriate allocation and presentation of reinsurance billings involving complex litigation of mass tort claims as applied to the elements of the reinsurance billing issued by [National Indemnity] to [TIG] in connection with the DJ Settlement.

(Filing No. 477-10.) National Indemnity contends, however, that Kuehn's opinion should be excluded in its entirety because it is not supported by sufficient facts and contrary to the facts of this case.

Particularly, National Indemnity maintains that Kuehn's opinion is unreliable because it is based on his factual assertion that "the number of occurrences issue had been extensively developed and part of the record for many years." (Filing No. 477-10.) National Indemnity claims this assertion is contradicted by the Montana Supreme Court, which declared that it could not "on this record take the next step and declare the number of occurrences." *Nat'l Indem. Cov. v. State of Montana*, 499 P.3d 516, 543 (Mont. 2021). The Court has reviewed Kuehn's report in its entirety, and believes this statement pulled from Kuehn's expert report is being taken out of context. As with Chaplin, the Court finds that any perceived faults with the accuracy of facts underlying Kuehn's opinion can be explored during cross-examination. Kuehn's opinion will not be excluded on this basis.[8]

National Indemnity further argues that Kuehn impermissibly proffers opinions regarding National Indemnity's state of mind. For instance, Kuehn's report states, "I find it reasonable to conclude that reinsurance played a primary motivation for what occurred next," and that "[i]t is reasonable to conclude that [National Indemnity's] attempt to predicate its settlement on 27 occurrences instead of 21, and to ignore the breach damages, is because the breach damages would not be recoverable under the terms of the TIG Certificate." (Filing No. 477-10.) It is true that "[e]xperts are not permitted to testify to an actor's state of mind." *U.S. Commodity Futures Trading Comm'n v. Wilson*, No. 13 CIV. 7884 (AT), 2016 WL 7229056, at *8 (S.D.N.Y. Sept. 30,

[8] TIG has made representations to the Court in various filings that there was a total of 21 occurrences. As such, the Court expects that there will only be a question as to whether there were 6 additional occurrences, as claimed by National Indemnity. In other words, 21 occurrences are undisputed.

2016). However, "an expert can testify as to whether a given practice is consistent with a given state of mind." *Id*. "Analogously, an expert can testify to whether a given state of mind is consistent with a given practice—i.e., a defendant likely knows X if they do Y." *In re Term Commodities Cotton Futures Litig.*, No. 12-CV-5126 (ALC), 2020 WL 5849142, at *14 (S.D.N.Y. Sept. 30, 2020). It appears from Kuehn's report, again when read in its entirety, that Kuehn intends to opine that National Indemnity's behavior was consistent with a particular motivation based on industry custom and practices—not what National Indemnity's motivation was. This is not impermissible expert testimony. Moreover, to the extent Kuehn attempts to exceed this boundary, the matter can be addressed during his testimony at trial.

Finally, National Indemnity maintains that Kuehn impermissibly offers opinions regarding the interpretation of the certificate. As an example, National Indemnity points to Kuehn's statement in his report that "there is nothing in the TIG Certificate to suggest there should be any qualitative restriction placed on [TIG]'s ability to evaluate the coverage under both [National Indemnity's] Policy and the TIG Certificate." (Filing No. 477-10.) The Court is not convinced that Kuehn's testimony is entirely legal opinion. *Klaphake*, 64 F.3d at 438-39. Kuehn's expert report is lengthy, and touches on a variety of separate, yet related, topics which could potentially be helpful to the jury given the highly complex nature of this case. Moreover, as stated previously, the distinction between admissible expert testimony and impermissible legal opinion is not always clear. Thus, as with Chaplin, the Court finds it appropriate to address the content of Kuehn's testimony at trial.

Accordingly,

**IT IS ORDERED** that National Indemnity's Motion in Limine Regarding Expert Witnesses (Filing No. 475) is denied.

Dated this 2nd day of November, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge